# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE FIRST CONNECTICUT BANCORP, INC. | Case No.: 1:18-cv-02496-RDB<br><br>CLASS ACTION<br><br>CONSOLIDATED SHAREHOLDER LITIGATION |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT AND SUMMARY OF PLAINTIFF'S ARGUMENT ............... 1

APPLICABLE LEGAL STANDARD ......................................................................... 5

   I.   The Motion to Dismiss Standard ........................................................... 6

   II.   The Elements of a Section 14(a)/Rule 14a-9 Claim and the PSLRA's Pleading Requirements ...................................................................................... 6

   III.   The Federal Materiality/Misleading Statement Standard ................................. 11

ARGUMENT .......................................................................................... 12

   I.   The Cash Flow Projections Were Material to First Connecticut Shareholders ............... 12

      A.   The First Connecticut Cash Flows .............................................. 13

      B.   People's United Cash Flows ................................................... 14

      C.   Defendants Rely on Distinguishable Cases and Inapplicable State Law Disclosure Standards ...................................................................... 15

   II.   Defendants Elected to Disclose and Discuss Valuation Information in the Proxy, and the Omission of the Cash Flow Projections Caused Specific Sections of the Proxy to Provide a Misleadingly Incomplete Overall Valuation Picture of First Connecticut and the Merger ...................................................................................... 18

   III.   Plaintiff Has Adequately Pled Loss Causation ............................................ 21

   IV.   Plaintiff is Not Required to Plead Scienter and Has Sufficiently Pled Negligence ......... 23

   V.   Plaintiff Has Adequately Pled His Section 20(a) Claim .................................... 25

CONCLUSION ........................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Aaron v. SEC*,
    446 U.S. 680 (1980) ............................................................................ 23-24

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004) ................................................................... 3, 13

*Adams v. Standard Knitting Mills, Inc.*,
    623 F.2d 422 (6th Cir. 1980) ....................................................................... 24

*In re Akorn Secs. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ......................................................... 22

*Arnold v. Soc'y for Sav. Bancorp*,
    650 A.2d 1270 (Del. 1994) .......................................................................... 23

*Azar v. Blount Int'l, Inc.*,
    No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ................ *passim*

*In re BankAmerica Corp. Secs. Litig.*,
    78 F. Supp. 2d 976 (E.D. Mo. 1999) .......................................................... 21

*Beck v. Dobrowski*,
    559 F.3d 680 (7th Cir. 2009) ................................................................... 7, 23

*Bender v. Jordan*,
    439 F. Supp. 2d 139 (D.D.C. 2006) .............................................................. 8

*Brown v. Brewer*,
    No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904 (C.D. Cal. July 14, 2008)  7, 21

*Brown v. Brewer*,
    No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010)  3, 4, 13, 23

*Burt v. Maasberg*,
    No.: ELH-12-0464, 2014 U.S. Dist. LEXIS 41982 (D. Md. Mar. 28, 2014) ........................... 1

*Bushansky v. Remy Int'l, Inc.*,
    262 F. Supp. 3d 742 (S.D. Ind. 2017) ........................................................ 17

*Calleros v. FSI Int'l, Inc.*,
    892 F. Supp. 2d 1163 (D. Minn. 2012) ........................................................ 17
*Carcieri v. Salazar*,
    555 U.S. 379 (2009) ...................................................................................... 16

*City of Hialeah Emps. Ret. Sys. v. FEI Co.*,
   No. 3:16-cv-1792-SI, 2018 U.S. Dist. LEXIS 11989 (D. Or. Jan. 25, 2018) ........................ 20

*City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Real Estate Tr., Inc.*,
   635 F. Supp. 2d 783 (N.D. Ill. 2009) .................................................... 9-10, 19, 25

*Coward v. Robinson*,
   276 F. Supp. 3d 544 (E.D. Va. 2017) .................................................................. 25

*Cowin v. Bresler*,
   741 F.2d 410 (D.C. Cir. 1984) ........................................................................... 8

*Dasho v. Susquehanna Corp.*,
   461 F.2d 11 (7th Cir. 1972) ......................................................................... 7, 8-9

*Dekalb County Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016) ......................................................................... 5, 23

*In re Dole Food Co., Stockholder Litig.*,
   8703-VCL CONSOLIDATED C.A. No. 9079-VCL, 2015 Del. Ch. LEXIS 223 (Del. Ch.
   Aug. 27, 2015) ............................................................................................. 22

*Dowling v. Narragansett Capital Corp.*,
   735 F. Supp. 1105 (D.R.I. 1990) ................................................................. 3, 16-17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................. 9, 21

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ........................................................................ 25

*Erickson v. Hutchinson Tech., Inc.*,
   158 F. Supp. 3d 751 (D. Minn. 2016) ................................................................. 17

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ................................................................... 10, 11, 19

*First Premier Bank v. Odysseas Papadimitriou*,
   No. CIV 14-4055, 2015 U.S. Dist. LEXIS 1243 (D.S.D. Jan. 7, 2015) ........................... 18

*First Va. Bankshares v. Benson*,
   559 F.2d 1307 (5th Cir. 1977) .......................................................................... 2

*Fleming Cos. Secs. & Derivative Litig.* ,
   NO. 5-03-MD-1530 (TJW), MDL-1530, 2004 U.S. Dist. LEXIS 26488

(E.D. Tex. June 10, 2004) ................................................................................ 10

*Folger Adam Co. v. PMI Indus., Inc.*,
   938 F.2d 1529 (2d Cir. 1991) ..................................................................... 11

*Fradkin v. Ernst*,
   571 F. Supp. 829 (N.D. Ohio 1983) ........................................................... 24

*Fresno Cty. Emps. Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ........................................................ 23

*Hayes v. Crown Cent. Petrol. Corp.*,
   78 F. App'x 857 (4th Cir. 2003) ............................................................... 6-7

*Helwig v. Vencor, Inc.*,
   251 F.3d 540 (6th Cir. 2001) ................................................................. 2, 18

*Hershfang v. Knotter*,
   562 F. Supp. 393 (E.D. Va. 1983) ............................................................... 7

*In re Hot Topic Sec. Litig.*,
   No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014)  21-22, 22, 25

*Ind. State Dist. Council v. Omnicare, Inc.*,
   719 F.3d 498 (6th Cir. 2013) ..................................................................... 24

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ..................................................................................... 5

*Juniper v. Zook*,
   876 F.3d 551 (4th Cir. 2017) ....................................................................... 6

*Keeney v. Larkin*,
   306 F. Supp. 2d 522 (D. Md. 2003) ........................................................... 10

*Knurr v. Orbital ATK, Inc.*,
   276 F. Supp. 3d 527 (E.D. Va. 2017) ................................................. 5, 7, 23

*Koppel v. 4987 Corp.*,
   191 F.R.D. 360 (S.D.N.Y. 2000) ................................................................. 8

*Kuebler v. Vectren Corp.*,
   No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 142524 (S.D. Ind. Aug. 22, 2018) . 17
*Latour v. Citigroup Glob. Mkts., Inc.*,
   CASE NO. 11cv1167-LAB (RBB),
   2012 U.S. Dist. LEXIS 35976 (S.D. Cal. Mar. 15, 2012) .......................... 19

*Malon v. Franklin Fin. Corp.*,
   No. 3:14CV671-HEH, 2014 U.S. Dist. LEXIS 166675 (E.D. Va. Dec. 2, 2014) ................. 17

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
   11 A.3d 1175 (Del. Ch. 2010) ................................................................. 4, 13, 14

*McMahan & Co. v. Wherehouse Entm't* ,
   900 F.2d 576 (2d Cir. 1990) ................................................................. 2

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ................................................................. 2

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................. 6, 8, 21

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007) ............................................................. 4, 13, 17, 19

*Nichting v. DPL Inc.*,
   No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739 (S.D. Ohio July 15, 2011) .................... 4, 13

*Oakland County Emps. Ret. Sys. v. Massaro*,
   702 F. Supp. 2d 1012 (N.D. Ill. 2010) .................................................... 9, 19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) ................................................................. 2

*Orlando v. CFS Bancorp, Inc.*,
   No. 2:13-CV-261 JD, 2013 U.S. Dist. LEXIS 153917 (N.D. Ind. Oct. 28, 2013) ................ 17

*Paramount Commc'ns v. Qvc Network*,
   637 A.2d 34 (Del. 1994) ................................................................. 22

*Parshall v. HCSB Fin. Corp.*,
   No.: 4:17-cv-01589-RBH, 2017 U.S. Dist. LEXIS 114948 (D.S.C. July 24, 2017) ............. 17

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   895 F.3d 933 (7th Cir. 2018) ............................................................. 25

*Reichle v. Howards*,
   566 U.S. 658 (2012) ................................................................. 6

*Republic Technology Fund, Inc. v. Lionel Corp.*,
   483 F.2d 540 (2d Cir. 1973) ............................................................. 20

*Rodenfels v. PDC Energy*,
    No. 16-cv-00251-PAB-STV, 2017 U.S. Dist. LEXIS 49248 (D. Colo. Mar. 30, 2017) ........ 20

*Schulein v. Petrol. Dev. Corp.*,
    No. SACV 11-1891 AG (ANx), 2012 U.S. Dist. LEXIS 191649 (C.D. Cal. June 25, 2012)  20

*SEC v. Mayhew*,
    121 F.3d 44 (2d Cir. 1997) ................................................................................................... 11

*SEC v. Nat'l Student Mktg. Corp.*,
    457 F. Supp. 682 (D.D.C. 1978) .......................................................................................... 15

*SEC v. Todd*,
    642 F.3d 1207 (9th Cir. 2011) ............................................................................................. 11

*Sennott v. Rodman & Renshaw*,
    414 U.S. 926 (1973) ............................................................................................................. 24

*Smith v. Robbins & Myers*,
    969 F. Supp. 2d 850 (S.D. Ohio 2013) ..................................................................... *passim*

*In re SolarCity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................................. 1

*Stahl v. Gib. Fin. Corp.*,
    967 F.2d 335 (9th Cir. 1992) ................................................................................................. 8

*Tsc Indus. v. Northway*,
    426 U.S. 438 (1976) ....................................................................................................... 11, 12

*Va. Bankshares v. Sandberg*,
    501 U.S. 1083 (1991) ......................................................................................................... 2, 8

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    No. 15-7658 (MAS) (LHG), 2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017) ........ 9, 21

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ................................................................................................. 2

*Wilson v. Great Am. Indus.*,
    855 F.2d 987 (2d Cir. 1988) ............................................................................................... 23

## Statutes, Rules & Regulations

15 U.S.C. § 78u-4 ................................................................................................................... 9, 10

15 U.S.C. § 78n(a)(1) ................................................................................................6

15 U.S.C. § 78n(e) ...................................................................................................23

17 C.F.R. § 240.14a-9 ................................................................................ 2, 6, 16, 23

Fed. R. Civ. P. 8 ............................................................................................ 4, 9, 21

Fed. R. Civ. P. 9 ........................................................................................................ 9

Fed. R. Civ. P. 12 ..................................................................................................... 6

## Other Authorities

J. Robert Brown Jr., *Speaking with Complete Candor: Shareholder Ratification* and *the elimination of the Duty of* Loyalty, 54 Hastings L.J. 641 (2003) ................................16

Jacob M. Mattinson, *Disclosure of Free Cash Flow Projections in a Merger or Tender Offer*, 116 Penn St. L. Rev. 577, 601 (Fall, 2011) ......................................................... 13

Steven M. Davidoff, *Fairness Opinions*, 55 AM. U.L. REV. 1587 (August, 2006) .................... 14

**PRELIMINARY STATEMENT AND SUMMARY OF PLAINTIFF'S ARGUMENT**

Plaintiff[1] seeks to hold Defendants accountable for refusing to disclose material financial projections that have been consistently recognized as the most important metric to shareholders faced with the significant decision of whether to approve a merger—free cash flow projections. First Connecticut's former shareholders were unable to assess the value of their shares and recognize the inadequacy of the Merger Consideration because the Proxy omitted: (i) the after-tax free cash flows that First Connecticut was expected to provide equity holders for the fiscal years 2018 through 2023 on a stand-alone basis (the "First Connecticut Cash Flows"); and (ii) the after-tax cash flows that People's United could provide equity holders for the fiscal years 2018 through 2023 on a stand-alone basis and on a pro forma basis, which included the Synergies (the "People's United Cash Flows," and together with the First Connecticut Cash Flows, the "Cash Flow Projections"). CAC ¶¶ 8-10, 35-57. In the CAC, Plaintiff explains why the Cash Flow Projections were material to First Connecticut's shareholders, and identifies *precisely* which statements in the Proxy[2] were rendered misleadingly incomplete as a result of their omission: (i) the summary of the *Discounted Cash Flow Analysis* performed by Piper Jaffray set forth on pages 55-56 of the Proxy (the "DCF Analysis Summary"); and (ii) the summary of the *Certain First Connecticut Prospective*

---

[1]  All capitalized terms not defined herein have the same meaning set forth in the Amended Class Action Complaint ("CAC") (Dkt. No. 29). Unless otherwise noted, all internal citations and quotation marks have been omitted, and all emphasis has been added.

[2]  The Proxy is attached as Exhibit A to Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. No. 30-4). While the Court obviously can and must refer to the Proxy to determine its *contents* for purposes of analyzing Plaintiff's claims, the Court *may not accept as true* all the various factual assertions that are contained within the Proxy. *Burt v. Maasberg*, No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982, at *35 (D. Md. Mar. 28, 2014); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 988 (N.D. Cal. 2017) ("Although courts generally assume a document's contents to be true on a motion to dismiss when that document is referenced in a complaint, the Court cannot do so when Plaintiffs' complaint alleges that these documents contain false or misleading statements.").

*Financial Information* on page 58 of the Proxy (the "Projections Table").

Defendants make four arguments in support of dismissal, each of which fail.  They first contend that for the DCF Analysis Summary and Projections Table to be considered *misleading*, Plaintiff must allege that they were "factually inaccurate."  Def. Br. at 13.[3] Defendants' argument blurs the important distinction between outright falsity and misleadingness, and ignores that Rule 14a-9 prohibits omissions of "any material fact" that render a statement either "false **or misleading**."  17 C.F.R. § 240.14a-9(a).  Defendants and the cases they cite fail to grapple with a large body of case law which clearly establishes two important propositions: (i) literally accurate or true statements can nevertheless be deemed misleading, *e.g., McMahan & Co. v. Wherehouse Entm't*, 900 F.2d 576, 579 (2d Cir. 1990), *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); and (ii) when a corporation voluntarily elects to speak with respect to valuation or projections, it assumes a duty "to speak fully and truthfully on those subjects" and may not deal in "half-truths."  *Helwig v. Vencor, Inc.*, 251 F.3d 540, 561 (6th Cir. 2001); *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1095 (1991) (recognizing concept of "misleadingly incomplete" disclosure in §14(a) case); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1331 (2015) ("[L]iteral accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another."); *First Va. Bankshares v. Benson*, 559 F.2d 1307, 1317 (5th Cir. 1977) ("A duty to speak the full truth arises when a defendant undertakes to say anything."); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 240 (2d Cir. 2016) (discussing half-truth theory of liability).

These propositions are rooted in the fact that selectively disclosing even literally

---

[3]    Citations denoted as "Def. Br. ___" refer to Defendants' Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 30).

accurate valuation information is inherently misleading, because selective disclosure impedes shareholders from gaining a full understanding of a company's overall valuation picture. Plaintiff alleges that is precisely what happened here.  CAC ¶¶ 2, 60, 73, 77-79.  These legal propositions have been applied in several Section 14(a) actions premised upon the failure to completely and accurately disclose projections or valuation-related information where motions to dismiss were denied.  *E.g., Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) ("[I]f a Proxy discloses valuation information, it must be complete and accurate."); *Brown v. Brewer*, No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863, at *69-70 (C.D. Cal. June 17, 2010) ("Both the proxy and the [financial valuation] opinion address the value of the [property] and so [the defendant] has a duty to fully and accurately disclose information related to the valuation."); *Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1110, 1119 (D.R.I. 1990) ("According to the complaint, the purchase price was not a fair one and the shareholders were unable to recognize its inadequacy because the proxy statement omitted and misrepresented a number of facts material to an accurate determination of value…When a corporation provides information to shareholders that is likely to affect their decision, the corporation has a duty to make that information complete and accurate.").

Defendants next argue that the CAC should be dismissed because the Cash Flow Projections were immaterial *as a matter of law*.  Def. Br. at 15-20.  However, this argument is easily disposed of, because information can only be deemed immaterial as a matter of law if it is "so obviously unimportant to an investor that reasonable minds cannot differ on the question…"  *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 275 (3d Cir. 2004) (citing *TSC Indus. v. Northway*, Inc., 426 U.S. 438, 450 (1976)).  And, given that numerous courts and valuation experts have found that cash flow projections are *plainly material* in the context of

merger transactions, along with the CAC's allegations explaining why such projections were important to First Connecticut shareholders and how the disclosed projections were meaningfully distinct from cash flow and insufficient for purposes of recognizing the unfairness of the Merger Consideration, the omitted Cash Flow Projections cannot be deemed immaterial as a matter of law on a motion to dismiss. *See, e.g., Azar v. Blount Int'l, Inc.*, Case No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *15 (D. Or. March 20, 2017) ("**Numerous cases discuss the importance of financial projections and cash flow analyses to shareholders**."); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863 at *70-71 ("'**investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest**.'") (quoting *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998)); *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D. Ohio July 15, 2011) ("**The Court notes that upon initial review, it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision**."); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) ("[**U**]**nder sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation**."); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) (enjoining merger vote until company disclosed cash flow projections utilized by banker for fairness opinion and noting that such projections are "**probably among the most highly-prized disclosures by investors.**").

Third, Defendants argue that Plaintiff has failed to sufficiently plead loss causation. Def. Br. at 20-22. This argument also fails, as pleading loss causation is subject only to Federal Rule of Civil Procedure 8's short and plain statement standard, and is routinely deemed satisfied in Section 14(a) actions where a shareholder alleges that the intrinsic value of their

stock was greater than the merger consideration they received or that they would have been better off if the company remained independent rather than merging.  Plaintiff makes such allegations by pointing to First Connecticut's strong stand-alone growth prospects, which were reinforced by statements made by the Individual Defendants and price targets issued by reputable financial analysts that considerably exceed the implied value of the Merger Consideration.  CAC ¶¶ 27-34.  Nothing more is required at the pleading stage.  *Infra* § III.

Lastly, Defendants ask the Court to ignore the "myriad decisions holding that liability can be imposed under Section 14(a) for negligently drafting a proxy statement," and to instead impose a scienter requirement. *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409 n.95 (2d Cir. 2016) (collecting cases). Another court in this circuit recently rejected the same argument, and this Court should follow suit. *Knurr v. Orbital ATK, Inc.*, 276 F. Supp. 3d 527, 539-40 (E.D. Va. 2017).

Clear authority holds that Section 14(a) of the Exchange Act gives shareholders the right to pursue damages.  *E.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).  Defendants had the option of either disclosing the Cash Flow Projections prior to the shareholder vote, or choosing not to and facing a post-vote claim for damages.  *See id.*  ("[T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements.").  Defendants chose the latter, and Plaintiff now seeks to hold them accountable for withholding material information from First Connecticut shareholders, who were deprived of their right to cast a fully informed vote on the Merger, which was financially unfair to them.

**APPLICABLE LEGAL STANDARD**

## I.      The Motion to Dismiss Standard

A complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face," but "detailed factual allegations are not required." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's allegations. The reviewing court must accept all factual allegations in the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in plaintiff's favor. *Juniper v. Zook*, 876 F.3d 551, 564 (4th Cir. 2017).

## II.      The Elements of a Section 14(a)/Rule 14a-9 Claim and the PSLRA's Pleading Requirements

Section 14(a) of the Exchange Act prohibits the solicitation of proxies in violation of SEC rules and regulations. 15 U.S.C. § 78n(a)(1). The statute stems "from a congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange[]" and was enacted for the "purpose of ensuring *full* and fair disclosure to shareholders." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381-82 (1970).

Rule 14a-9 prohibits proxy solicitations containing statements that are "false and misleading with respect to *any* material fact" or that omit "*any* material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). To adequately state a claim under § 14(a) and Rule 14a-9, a plaintiff must allege that the proxy contained a false or misleading statement or omission of material fact, and that the deficient proxy was an essential link in completing a transaction that caused the plaintiff to suffer financial loss. *See*

*Hayes v. Crown Centr. Petrol. Corp.*, 78 F. App'x 857, 861 (4th Cir. 2003) (per curiam) (unpublished) (citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3rd Cir. 1992)).  Notably, "neither the text of § 14(a) nor Rule 14a-9 refers to a specific state of mind" to impose liability. *Knurr*, 276 F. Supp. 3d at 539.  In fact, "[a] plain text reading of § 14(a) with reference to the statutory context suggests the provision contemplates a negligence, not a scienter requirement." *Id.*; *see also Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) ("There is no required state of mind for a violation of section 14(a); a proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials.").

Here, the Proxy was indisputably an essential link in the accomplishment of the unfair Merger, as the transaction could not have been accomplished without the affirmative vote of a majority of the Company's outstanding shares.  *See, e.g., Hershfang v. Knotter*, 562 F. Supp. 393, 398 (E.D. Va. 1983) ("A Rule 14a-9 claim requires only a showing of 'transactional causation' that the proxy solicitation itself, not the alleged defect in the solicitation, was an essential link in the transaction.  In the instant case, there can be no doubt that the transaction required shareholder approval which, in turn, required the proxy solicitation.  Thus transactional causation existed regardless of whether plaintiff relied on the proxy materials."); *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 30 (7th Cir. 1972) ("On the question of causation, there is no doubt that the proxy solicitation was an essential link in the accomplishment of the merger."); *Brown v. Brewer*, No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904, at *21 (C.D. Cal. July 14, 2008) ("Plaintiff here has adequately pled that the 2005 Proxy was an essential link in the approval of the Intermix merger with News Corp. Shareholder approval was required for consummation of that transaction.").  Accordingly, "the touchstone of a section 14(a) violation is

a material misstatement," *Stahl v. Gib. Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992), as the causation or "essential link" element is satisfied if materiality is established because of the presumption established by the Supreme Court in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  *Id.* at 385 ("Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.").

Importantly, because of the holding in *Mills*, proof that any individual shareholder relied on the alleged misleading statement is unnecessary.  *See Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1100-01 (1991) (explaining that "[t]he *Mills* Court…held that causation of damages by a material proxy misstatement could be established by showing that minority proxies necessary and sufficient to authorize the corporate acts had been given in accordance with the tenor of the solicitation."); *Cowin v. Bresler*, 741 F.2d 410, 426-29 (1984); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) ("To establish causation under their § 14(a) claims, plaintiffs need not prove individual reliance; rather they need prove that defendants' omissions or misstatements were material.").  Plaintiffs also "need not allege other-shareholder reliance to maintain a § 14(a) claim."  *Bender v. Jordan*, 439 F. Supp. 2d 139, 165 (D.D.C. 2006).  And because "materiality is an objective standard, it should not matter whether any particular shareholder was actually misled by the challenged misrepresentations."  *Id.* at 164 (quoting *Stahl*, 967 F.2d at 337)).

To recover damages in a Section 14(a) case, a plaintiff also must plead that the merger caused them to suffer financial loss.  Such loss occurs if shareholders would have been better off with no merger at all because their shares were worth more than they received, or a more favorable exchange ratio would have been available if there had been full disclosure.  *See Dasho*,

461 F.2d at 31. The loss requirement was codified in the PSLRA, which provides that a plaintiff "shall have the burden **of proving** that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). However, at the pleading stage in a Section 14(a) action,[4] allegations of loss causation are subject only to the "short and plain statement" standard set forth in Fed. R. Civ. P. 8. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-7658 (MAS) (LHG), 2017 U.S. Dist. LEXIS 66037, at *39 (D.N.J. Apr. 28, 2017). Plaintiff need "not plead a precise figure at which the Company's stock should have been valued" so long as "the allegations that Plaintiff[] set[s] forth suffice to make plausible the claim that the Company's stock was worth more than [what Plaintiff received in the Merger]." *Azar*, 2017 U.S. Dist. LEXIS 39493, at *33. As set forth below, the CAC satisfies this requirement.

Additionally, the PSLRA provides that "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). While Defendants attempt to turn this straightforward requirement into a daunting pleading hurdle, Def. Br. at 12, it simply requires identification of the particular statements being challenged. *See, e.g.*, *Oakland Cty. Emples. Ret. Sys. v. Massaro*, 702 F. Supp. 2d 1012, 1018 (N.D. Ill. 2010) ("Although the allegations in Count I (in which the section 14(a) claim is asserted) may be somewhat spare, they nonetheless identify the particular statements made by the defendants and explain why the statements are alleged to be false and/or misleading."); *City of St. Clair Shores Gen. Emples. Ret. Sys. v. Inland W. Retail Real Estate Tr.*,

---

[4]    It is important to distinguish Section 14(a) claims sounding in negligence from securities fraud claims under Section 10(b) when considering the loss causation requirement, because § 10(b) claims obviously sound in fraud and implicate Fed. R. Civ. P. 9, and they also do not receive the causation presumption that the Supreme Court created for § 14(a) claims in *Mills. See infra* § III.

*Inc.*, 635 F. Supp. 2d 783, 792 (N.D. Ill. 2009) (denying § 14(a) motion to dismiss and reasoning that while plaintiff's claims regarding the statements were "obviously limited by the information available at the pleading stage," they satisfied the PSLRA's requirements because "plaintiffs' allegations sufficiently identify the misleading statements, articulate the reasons why the statements are misleading, and state the facts upon which plaintiffs' knowledge or belief is based.").

Here, the CAC clearly specifies the statements alleged to have been rendered misleading by the omission of the Cash Flow Projections (the DCF Analysis Summary and the Projections Table), and alleges why they were misleading. *E.g.*, CAC ¶¶ 8, 10, 39-57 ("As set forth herein, Piper Jaffray could not have performed its *Discounted Cash Flow Analysis* without the Cash Flow Projections. By withholding the Cash Flow Projections, First Connecticut shareholders were unable to properly assess the fairness of the Merger Consideration. Simply put, a so-called 'summary' of a valuation analysis is misleading if underlying assumptions or key inputs are omitted, particularly when shareholders are impeded from recognizing how significantly undervalued their shares are as compared to the 'implied' valuation range they have been given because of the omission."). Nothing further is required at the pleading stage. *See Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995) ("[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier or fact.").

Furthermore, the PSLRA does not require "plaintiff to set forth facts which, because of the lack of discovery, are in the exclusive possession of the Defendants." *Keeney v. Larkin*, 306 F. Supp. 2d 522, 528 (D. Md. 2003); *In re Fleming Cos. Sec. & Derivative Litig.*, Nos. 5-03-MD-1530 (TJW), MDL-1530, 2004 U.S. Dist. LEXIS 26488, at *20-21 (E.D. Tex. June 10, 2004)

(same); *see also* 15 U.S.C. § 78u-4(b)(1)(B) (allowing plaintiffs to plead misleading statements "on information and belief" so long as the "facts on which that belief is formed" are also pled).

### III.     The Federal Materiality/Misleading Statement Standard

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus.,* 426 U.S. at 449. "[I]t is well-established that a material fact need not be outcome-determinative; that is, it need not be important enough that it 'would have caused the reasonable investor to change his vote.' Rather, the information need only be important enough that it 'would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533 (2d Cir. 1991) (quoting *TSC Indus.*, 426 U.S. at 449). Although this "subtle distinction between information that is outcome-determinative and that which is important, but not outcome-determinative," sometimes gets muddled in the case law, it is a "critical" distinction that flows directly from *TSC Industries.   See id*. at 1533 n.3. "Information regarding a company's financial condition is material to investment." *SEC v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011); *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) ("Material facts include those which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities.").

"Whether an omission is 'material' is a determination that requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.   Similarly, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." *Fecht*, 70 F.3d at 1080-81.   Accordingly, determining that an omission is immaterial as a matter of law or that a

statement is not misleading as a matter of law "is only appropriate when the adequacy of the disclosure is so obvious that reasonable minds could not differ." *Todd*, 642 F.3d at 1220. Further, the Supreme Court has held that where the issue of materiality is not clear, disputes should be resolved in favor of finding information material. *TSC Indus.*, 426 U.S. at 448 ("[I]t is appropriate that [any] doubt[ ] be resolved in favor of those the statute is designed to protect.").

Based upon the cases cited herein, Plaintiff respectfully submits that the Cash Flow Projections cannot be deemed so obviously unimportant that no reasonable investor could possibly have found them to be material. Similarly, the "half-truth," incomplete summaries in the Proxy regarding the DCF Analysis and the Projections Table should not be deemed, as a matter of law, to be not misleading.

## ARGUMENT

Three legal principles, applied collectively, indicate why Defendants' motion to dismiss should be denied. First, cash flow projections such as the type omitted from the Proxy are material to shareholders faced with the significant decision of whether to approve a merger. Second, when a corporate actor elects to disclose valuation information to shareholders, the actor may not cherry-pick the financial metrics to disclose while withholding other readily available financial data that is critical to properly understanding the overall valuation picture of the company or transaction at issue and is necessary for shareholders to recognize that the consideration being offered to them is inadequate. Third, incomplete "summaries" of valuation analyses and projections can constitute misleading statements within the meaning of the Exchange Act. As discussed below, when analyzed and applied collectively, these principles indicate that Defendants' motion to dismiss should be denied.

### I.     The Cash Flow Projections Were Material to First Connecticut Shareholders

12

In the CAC, Plaintiff thoroughly alleges why the Cash Flow Projections were material to First Connecticut shareholders.  Fundamentally, it bears emphasizing that Plaintiff need not establish that the Cash Flow Projections were *material as a matter of law* in order to defeat Defendants' motion to dismiss.  Rather, it is Defendants who bear the burden of establishing the Cash Flow Projections were *immaterial* as a matter of law—that is, they must convince the Court that "the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question…"  *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 275.  Plaintiff submits that in light of the cases and valuation treatises referenced herein and in the CAC, such a conclusion cannot be reached.

### A.  The First Connecticut Cash Flows

First, the CAC sets forth several paragraphs explaining why the First Connecticut Cash Flows were material, including that "[w]ell settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected Net Income."  CAC ¶ 40.  Plaintiff also explains the fundamental differences between free cash flow and net income, and why free cash flow is a much better metric for purposes of understanding the fair value of stock.  CAC ¶ 41.  This is not some baseless or conclusory assertion—it is backed up by numerous cases,[5] financial treatises,

---

[5]   *Azar*, 2017 U.S. Dist. LEXIS 39493 at *15 ("Numerous cases discuss the importance of financial projections and cash flow analyses to shareholders."); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863 at *70-71 ("'investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest. Surely, the average investor's interest would be piqued by a company's internal projections…'") (quoting *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998)); *Nichting*, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 ("The Court notes that upon initial review, it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision."); *Maric Capital*, 11 A.3d at 1178 ("[U]nder sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation."); *Netsmart Techs., Inc.*, 924 A.2d at 209 (noting that cash flow projections are "probably among the most highly-prized disclosures by

and valuation experts.  Indeed, First Connecticut itself routinely emphasized the Company's cash flow projections in its SEC filings including its latest 10-K, CAC ¶ 39, and Piper Jaffray relied upon the First Connecticut Cash Flows to perform its most important valuation analysis—the *Discounted Cash Flow Analysis*.  Steven M. Davidoff, *Fairness Opinions*, 55 AM. U.L. REV. 1587 (August, 2006) ("[I]n the corporate control transaction paradigm the most important analysis is, absent unusual circumstances, the discounted cash flow calculus.").  Simply stated, the question that First Connecticut investors needed to know the answer to in determining whether to vote for the Merger was clear: was the consideration being offered to them fair compensation for the benefits they would receive as a shareholder from the future expected cash flows of the corporation if the corporation remained a standalone entity?  *Maric Capital, Inc.*, 11 A.3d at 1178.  First Connecticut shareholders and the market were impeded from properly answering this question and recognizing the inadequacy of the Merger Consideration because Defendants failed to disclose the First Connecticut Cash Flows.

### B.  People's United Cash Flows

Plaintiff also sufficiently alleges why the People's United Cash Flows were material. Specifically, Plaintiff explains People's United's stand-alone and pro forma cash flows were material to First Connecticut's shareholders in light of the fact that the Merger Consideration was comprised of a fixed amount of People's United's common stock.  CAC ¶ 44.  As several courts have explained:

---

investors.  Investors can come up with their own estimates of discount rates or (as already discussed) market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."); *see also* Jacob M. Mattinson, *Disclosure of Free Cash Flow Projections in a Merger or Tender Offer*, 116 PENN ST. L. REV. 577, 601, 604 (Fall, 2011) ("An evaluation of the importance of free cash flow projections under financial theory further strengthens the argument in favor of [their materiality].").

> **In a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote. 'Perhaps nothing is more relevant to a vote on whether or not to approve a merger than the earnings picture of the acquiring company, at least to the stockholder of the company being acquired**.'"

*SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 707 (D.D.C. 1978) (quoting *Republic Technology Fund, Inc. v. Lionel Corp*., 483 F.2d 540, 547 (2d Cir. 1973)).

Here, *no* projections for People's United were disclosed to First Connecticut shareholders, despite the fact that Piper Jaffray relied upon the People's United Cash Flows to perform its most important valuation analysis—the Discounted Cash Flow Analysis—for People's United.  CAC ¶¶ 45-47.  Simply stated, it obviously *cannot* be concluded that no reasonable investor could have deemed the People's United Cash Flows to be important in deciding whether to vote for a Merger in which the consideration consisted of People's United stock. Thus, once again, the omitted cash flow projections cannot be deemed immaterial as a matter of law, as they must be in order for Plaintiff's claim to be dismissed on materiality grounds.

### C. Defendants Rely on Distinguishable Cases and Inapplicable State Law Disclosure Standards

Defendants erroneously argue that Rule 14a-9 merely requires disclosure of a so-called "fair summary" of a company's financial projections and a banker's valuation analyses, and further assert that shareholders are never entitled to "information to make their own independent evaluation of fair value." Def. Br. at 2, 16-19. These standards emanate from Delaware state cases addressing the details that *Delaware law* requires directors to disclose regarding a financial advisor's valuation analyses.  Indeed, the words "fair summary", "independent valuation" and "fair value" do not appear in the text of Section 14(a) nor Rule 14a-9, and these vague Delaware standards have no place in a Section 14(a) case alleging inadequate disclosure of projections.

15

Indeed, there is perhaps nothing more important to a shareholder faced with a merger than the financial information necessary to determine whether they are getting a fair deal. *See supra*.

While certain district courts have blindly applied Delaware's standards without considering their origin or the text of Section 14(a) and Rule 14a-9 (including the federal cases Defendants rely upon), this Court should decline to do so. The text of Rule 14a-9 is clear as to what must be disclosed in a proxy ("***any*** material fact necessary in order to make the statements therein not false or misleading") and what cannot appear in a proxy ("***any*** statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to ***any*** material fact."). 17 C.F.R. § 240.14a-9. The Court must apply the unambiguous text of the Rule and enforce it according to its terms, *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009), and should not read standards from Delaware case law into the text of Rule 14a-9.[6] Furthermore, federal case law is clear with respect to the *federal* disclosure standard imposed when corporate actors elect to disclose financial projections – "if a Proxy discloses valuation information, it must be complete and accurate." *Smith v. Robbins & Myers*, 969 F. Supp. 2d at 874 (quoting *Brown*, 2010 U.S. Dist. LEXIS 60863 at 69-70)); *Dowling*, 735 F. Supp. at 1119 ("While the line between half truths and untruths is sometimes difficult to draw, both trigger a

---

[6]     It should also be noted that Delaware courts apply a heightened materiality standard. *See* J. Robert Brown Jr., *Speaking with Complete Candor: Shareholder Ratification* and *the elimination of the Duty of* Loyalty, 54 Hastings L.J. 641, 643 (2003) ("The interpretation of materiality by Delaware courts lies in sharp contrast to that used in the federal system. Although both rely on an identical definition of materiality, a comparison of cases suggests that, while state courts use the same terminology, they rely on a far more restrictive interpretation. As a result, shareholders do not always receive information that federal courts would deem 'important' to a 'reasonable investor… Delaware courts decline to find as material categories of information suggesting the inadequacy of the offering price. They do not require the disclosure of additional, higher-priced offers, alternative formulas used to compare value, even if presented to the board, or other valuations in the company's possession."). Thus, the fact that several Delaware cases have found cash flow projections to be plainly material even under Delaware's more stringent materiality standard serves as further reason why the Court should not deem the omitted Cash Flow Projections to be immaterial as a matter of law on a motion to dismiss.

duty to disclose any additional or contradictory facts that may be necessary to present shareholders with a *complete* picture and prevent them from being misled."). In other words, under federal law, *completeness* is the standard, not "summaries" that self-interested directors or bankers deem "fair."

Moreover, even if the Court wishes to apply the "fair summary" standard, summaries of a discounted cash flow analysis and projections that omit the indisputably most important input in the analysis—the cash flow projections—cannot be deemed a "fair summary" under any legitimate definition of the term. *See Netsmart Techs., Inc.*, 924 A.2d at 204 (**Only providing some key inputs "is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers**…The proxy's failure to disclose **all** the projections used by [the financial advisor] in preparing its [discounted cash flow] valuation renders it materially incomplete."). Simply stated, there is nothing "fair" about summaries of a financial advisor's valuation analyses or a company's projections that fail to include the projections the advisor actually utilized for its analyses—here, the Cash Flow Projections—and instead merely provide shareholders with projections for fundamentally different metrics that depict *less than half* the time period that was utilized in the financial advisor's analyses. *See* CAC ¶¶ 8, 39-42, 44-46, 48-53.

It should also be noted that several of the cases Defendants cite arose in the context of motions for preliminary injunctions.[7] This distinction is important, because on a motion for

---

[7]      Specifically, the following opinions cited by Defendants involved motions for injunctions or temporary restraining orders: *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163 (D. Minn. 2012); *Erickson v. Hutchinson Tech., Inc.*, 158 F. Supp. 3d 751 (D. Minn. 2016); *Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 142524 (S.D. Ind. Aug. 22, 2018); *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 U.S. Dist. LEXIS 166675 (E.D. Va. Dec. 2, 2014); *Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 U.S. Dist. LEXIS 153917 (N.D. Ind. Oct. 28, 2013); and *Parshall v. HCSB Fin. Corp.*, No. 4:17-cv-01589-

preliminary injunction the shareholder plaintiffs were required to establish a strong likelihood of success on the merits, and the courts were therefore essentially required to find the omissions were *material as a matter of law* in order to grant an injunction. Conversely, on a motion to dismiss, Plaintiff's claims cannot be dismissed on materiality grounds unless the Court concludes that the omissions and alleged misleadingly incomplete statements are *immaterial as a matter of law*. In other words, the numerous cases Defendants cite denying motions for preliminary injunctions are of little relevance here, given the significantly different standards that apply on a motion to dismiss.    Simply stated, "[t]he question [] at this early stage of the litigation is not whether Plaintiffs ultimately will prevail, but whether Plaintiffs have alleged sufficient facts in the Amended Complaint which, taken as true, create a plausible claim for relief." *First Premier Bank v. Papadimitriou*, No. 14-4055, 2015 U.S. Dist. LEXIS 1243, at *26 (D.S.D. Jan. 7, 2015). For the reasons set forth herein, the answer to this question is "yes."

## II.    Defendants Elected to Disclose and Discuss Valuation Information in the Proxy, and the Omission of the Cash Flow Projections Caused Specific Sections of the Proxy to Provide a Misleadingly Incomplete Overall Valuation Picture of First Connecticut and the Merger

As set forth above, it is well-settled that when a corporate actor elects to disclose valuation information to shareholders, they must do so in a complete and accurate manner. *See supra* page 2 (collecting cases); *Helwig*, 251 F.3d at 561 ("With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known--but it may not choose half-truths.").

---

RBH, 2017 U.S. Dist. LEXIS 114948 (D.S.C. July 24, 2017). Additionally, *Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742, 750 (S.D. Ind. 2017) involved a motion for final approval of a "disclosure-only" settlement, which required the plaintiff to establish the supplemental disclosures were "plainly material." As noted herein, Plaintiff does not need to establish the omitted Cash Flow Projections were "plainly material" at this procedural juncture—rather, Defendants bear the burden of establishing the omitted projections were immaterial as a matter of law, a burden they cannot carry.

Here, the CAC identifies the precise statements in the Proxy that were rendered misleading by the omission of the Cash Flow Projections: the DCF Analysis Summary (CAC ¶¶ 7-10, 37, 40, 42, 48-53) and the Projections Table (CAC ¶¶ 5-8, 37-38, 54-57).  Simply put, it is misleading to "summarize" a valuation analysis by excising specific, readily-available key inputs that are necessary to properly assess the value of the company at issue.  *See Smith*, 969 F. Supp. at 872-73; *Netsmart Techs., Inc.*, 924 A.2d at 203-04.  The CAC identifies with the requisite specificity the statements that were rendered misleading by the omission of the Cash Flow Projections, and alleges why such statements were misleading.  CAC ¶¶ 5-8, 37-46, 48-53, 55-56; *see Massaro*, 702 F. Supp. 2d at 1018 (even "somewhat spare" allegations were sufficient because "they nonetheless identify the particular statements made by the defendants and explain why the statements are alleged to be false and/or misleading."); *City of St. Clair Shores Gen. Emples. Ret. Sys.*, 635 F. Supp. 2d at 792 (reasoning that while plaintiff's claims regarding the statements were "obviously limited by the information available at the pleading stage," they satisfied the PSLRA's requirements because "plaintiffs' allegations sufficiently identify the misleading statements, articulate the reasons why the statements are misleading, and state the facts upon which plaintiffs' knowledge or belief is based.").  The Court need not determine whether these statements, as a matter of law, created a misleading valuation picture of First Connecticut stock and the financial fairness of the Merger at this procedural juncture.  *Fecht*, 70 F.3d at 1080-81 ("[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier or fact.").

In sum, incomplete summaries of valuation analyses and projections can constitute misleading statements within the meaning of the Exchange Act,[8] and Plaintiff has sufficiently alleged why such incomplete summaries were plausibly misleading here.  *See Smith*, 969 F. Supp. 2d 850 at 872-73 (finding summaries of valuation analyses and projections could be rendered misleading by omission of multiples and other projections); *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2012 U.S. Dist. LEXIS 191649, at *21 (C.D. Cal. June 25, 2012) ("Even if the disclosed valuations were correct in all other material respects, Plaintiffs sufficiently allege that the final valuation picture was misleading because it did not include the omitted production sources."); *Azar*, 2017 U.S. Dist. LEXIS 39493 at *12 (denying motion to dismiss § 14(a) claim premised upon omission of a specific set of allegedly more accurate projections and finding that the projections that were included in the Proxy could constitute misleading statements); *City of Hialeah Emples. Ret. Sys. v. FEI Co.*, No. 3:16-cv-1792-SI, 2018 U.S. Dist. LEXIS 11989, at *38 (D. Or. Jan. 25, 2018) ("The result of the analysis may be false or misleading if underlying assumptions or key inputs are omitted or misrepresented..."); *Rodenfels v. PDC Energy*, No. 16-cv-00251-PAB-STV, 2017 U.S. Dist. LEXIS 49248, at *10 (D. Colo. Mar. 30, 2017) ("Misleading value estimates are actionable as misrepresentations in the securities context even when they are based on opinion or are subject to uncertainty."); *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 547 (2d Cir. 1973) ("sales and earnings

---

[8]      Defendants contend in a footnote that Plaintiff must also allege subjective falsity, Def. Br. at 13 n.5. First, the argument is insufficiently raised and developed, and is therefore waived. *Latour v. Citigroup Glob. Mkts., Inc.*, No. 11cv1167-LAB (RBB), 2012 U.S. Dist. LEXIS 35976, at *18 (S.D. Cal. Mar. 15, 2012). Further, Defendants are wrong. Neither of the two statements Plaintiff alleges were misleadingly incomplete (the DCF Analysis Summary and the Projections Table) were opinion statements—they were misleadingly incomplete numerical representations of Piper Jaffray's analyses conducted on June 18, 2018 and the then-existing projections it utilized for such analyses. Furthermore, Plaintiff *does not* allege that the Projections Table was misleading because the projected metrics have failed to come to fruition (*i.e.*, there are no "fraud by hindsight" allegations), rendering subjective falsity irrelevant.

[] set forth in summarized form in a table" deemed misleading by "failure to make full disclosure therein of all the facts bearing upon the Corporation's earning.").

### III.   Plaintiff Has Adequately Pled Loss Causation

As set forth above, in the context of a Section 14(a) claim sounding in negligence, loss causation is subject only to Fed. R. Civ. P. 8(a)'s "short and plain statement" pleading standard. *See Dura Pharmaceuticals, Inc.*, 544 U.S. at 346; *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 66037 at *39.   As the cases cited below illustrate, in a Section 14(a) action, loss causation is sufficiently pled where the plaintiff alleges a proxy statement was an essential link in the consummation of a transaction which caused him financial harm.

As noted above, proximate or "transaction" causation is established as a matter of law where a materially misleading proxy is utilized to procure shareholder approval of a transaction. *Mills*, 396 U.S. 375; *Brown v. Brewer*, 2008 U.S. Dist. LEXIS 108904 at *20-21; *Azar*, 2017 U.S. Dist LEXIS 39493 at *31; *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 989 (E.D. Mo. 1999) ("[W]hen plaintiffs have established that proxies necessary to approval of [the transaction] were obtained by means of a materially misleading solicitation, they have established causation as a matter of law.").   Thus, because Plaintiff has sufficiently pled materiality, he has also sufficiently pled transaction causation.  *Id.*

With respect to pleading that the Merger caused shareholders to suffer financial loss, Plaintiff alleges that the Merger Consideration undervalued shareholders' shares in light of the Company's strong stand-alone growth prospects and valuations issued by reputable financial analysts.  CAC ¶¶ 27-34, 38, 48-57.  Plaintiff need "not plead a precise figure at which the Company's stock should

have been valued" so long as "the allegations that Plaintiff[] set[s] forth suffice to make plausible the claim that the Company's stock was worth more than [what Plaintiff received in the Merger]." *Azar*, 2017 U.S. Dist. LEXIS 39493 at *33; *In re Hot Topic Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513, at *28 (C.D. Cal. May 2, 2014) (loss causation sufficiently pled where "Plaintiff's claims rest on its allegation that the Merger Consideration was actually a discount to Hot Topic's enterprise value and intrinsic value"); *Smith*, 969 F. Supp. 2d at 868 (loss causation sufficiently pled where plaintiff alleged "[a]s a result of the false and misleading Proxy, the Company's former shareholders were precluded from casting a fully informed vote in connection with the Merger and many agreed to give up their equity interests in the Company in exchange for the inadequate Merger consideration."). Indeed, "'[l]oss causation is a fact-based inquiry' that need not be proven until later stages of litigation." *In re Akorn Secs. Litig.*, 240 F. Supp. 3d 802, 821 (N.D. Ill. 2017) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005)).

Defendants point to the fact that the Merger Consideration "represented a premium of 24.3% to First Connecticut's shareholders, based on the closing price of First Connecticut's stock on June 18, 2018." Def. Br. at 3. But the fact that shareholders received a premium for their shares does not mean that they received sufficient consideration to compensate them for the intrinsic value of their shares. In a merger transaction, shareholders are entitled to and routinely receive a significant premium over the trading price of their shares. *E.g.*, *Paramount Commc'ns v. Qvc Network*, 637 A.2d 34, 43 (Del. 1994); *see also In re Dole Food Co., Stockholder Litig.*, Cons. C.A. No. 8703-VCL, 9079-VCL, 2015 Del. Ch. LEXIS 223, at *156 n.41 (Del. Ch. Aug. 27, 2015). The relevant question for loss causation purposes in the merger context is whether the premium received sufficiently compensated shareholders for the *intrinsic* value of their shares, not

whether they received more than the trading price. *See Hot Topic*, 2014 U.S. Dist. LEXIS 180513 at *28 (fact that shareholders received a premium not dispositive); *Azar*, 2017 U.S. Dist LEXIS 39493 at *31 ("Plaintiffs also sufficiently plead economic loss. They allege that the Company's intrinsic value exceeded the $10.00 per share price offered in the Merger.").

### IV.    Plaintiff is Not Required to Plead Scienter and Has Sufficiently Pled Negligence

Defendants' last-ditch argument that Plaintiff must plead scienter to sustain his Section 14(a) claim should not delay the Court long. As noted above, "myriad" of courts have held that Section 14(a) claims require, at most, a showing of negligence. *Dekalb Cty. Pension Fund*, 817 F.3d at 409 n.95 (collecting cases); *Beck*, 559 F.3d at 682. In fact, another court in this circuit recently rejected the same scienter argument Defendants' raise here. *Knurr*, 276 F. Supp. 3d at 539-40. And here, because Plaintiff has sufficiently pled materiality, he has also sufficiently pled negligence. *Wilson v. Great Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988) ("As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the [] negligence standard."); *Fresno Cty. Emples. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 560 (S.D.N.Y. 2017) (same); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863 at *81 (same); *see also Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1276 (Del. 1994) (imposing a duty on directors to review proxy materials and disclose all material information).

Defendants' argument that the Court should ignore this mountain of directly on-point precedent and instead look to cases interpreting a *different* statute—Section 14(e), 15 U.S.C. § 78n(e)—is unavailing, because unlike Section 14(e), Rule 14a-9 does not contain the words

"fraudulent, deceptive, or manipulative." *Cf.* 17 C.F.R. § 240.14a-9(a); *Aaron v. SEC*, 446 U.S. 680, 696 (1980) (holding that while "[t]he language of § 17 (a)(1), which makes it unlawful 'to employ any device, scheme, or artifice to defraud,' plainly evinces an intent on the part of Congress to proscribe only knowing or intentional misconduct…By contrast, the language of § 17 (a)(2), which prohibits any person from obtaining money or property 'by means of any untrue statement of a material fact or any omission to state a material fact,' is devoid of any suggestion whatsoever of a scienter requirement.").

Furthermore, Defendants' reliance on two Sixth Circuit cases is misplaced. In *Adams v. Standard Knitting Mills, Inc*., 623 F.2d 422 (6th Cir. 1980), the court held "that scienter should be an element of liability in private suits under the proxy provisions as they apply to *outside accountants*." *Id*. at 428. The *Adams* Court's holding plainly did not implicate claims against the type of Defendants in this case—corporations, their officers and directors. *Id*.; *Fradkin v. Ernst*, 571 F. Supp. 829, 843 (N.D. Ohio 1983) (explaining the *Adams* Court "distinguished the scienter requirements for outside accountants and corporate issuers" and holding that "[u]pon review, the Court concludes that a distinction between the liability of a corporate issuer and outside accountants is appropriate, and a negligence standard should apply to the corporation issuing the proxy statement."). Furthermore, Defendants' citation to clear dictum in *Ind. State Dist. Council v. Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013) does nothing to advance their argument. *Id*. at 507 n.3 (in plain dictum in a footnote with no analysis, merely citing to *Adams* and stating § 14(a) required proof of scienter without acknowledging that *Adams*' holding only applied to outside accountants).

24

Simply stated, there is no remotely sound legal basis for the Court to depart from the myriad decisions holding that negligence is sufficient to state a claim under Section 14(a), and it should decline to do so.

## V.   Plaintiff Has Adequately Pled His Section 20(a) Claim

The remedial nature of Section 20(a) requires a liberal construction, in favor of finding liability. *Sennott v. Rodman & Renshaw*, 414 U.S. 926, 929 (1973). "Section 20(a) claims are construed liberally and require only some indirect means of discipline or influence short of actual direction to hold a control person liable." *City of St. Clair Shores Gen. Emples. Ret. Sys.*, 635 F. Supp. 2d at 795. Accordingly, courts routinely conclude that where a plaintiff has adequately pled a Section 14(a) claim, they have also successfully pled a Section 20(a) claim. *See, e.g., Knurr*, 276 F. Supp. 3d at 544; *Smith*, 969 F. Supp. 2d at 867; *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *29-30. Here, Plaintiff has adequately pled his Section 20(a) claim by alleging that the Individual Defendants held positions of authority as First Connecticut directors and had the ability to control the issuance and contents of the Proxy. CAC ¶¶ 69-75.

Further, Defendants challenge the § 20(a) claim on the sole basis that Plaintiff purportedly has not pled a primary violation of § 14(a). Def. Br. at 25. Since Defendants are wrong on that assertion, Plaintiff's § 20(a) claim must survive as well.

## CONCLUSION

For the foregoing reasons, Plaintiff has adequately pled that Defendants violated Section 14(a)/Rule 14a-9 and Section 20(a) of the Exchange Act. However, in the event the Court finds dismissal is warranted, Plaintiff respectfully requests leave to amend, which should be freely granted in cases such as this. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("[I]n this technical and demanding corner of the law, the drafting of a

cognizable complaint can be a matter of trial and error."); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (same).

DATED: February 28, 2019

**GOLDMAN & MINTON, P.C.**

**OF COUNSEL**

/s/ *Thomas J. Minton*
Thomas J. Minton – No. 03370
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Tel.: (410) 783-7575
Fax: (410) 783-1711

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

*Attorneys for Lead Plaintiff and Liaison Counsel for the Putative Class*

*Counsel for Lead Plaintiff and Lead Counsel for the Putative Class*

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel.: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
       gegleston@gme-law.com

*Additional Counsel for Plaintiff*