**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| SELWYN KARP, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) Case No. 1:18-cv-02496-RDB |
| Plaintiff, | ) |
| | ) CLASS ACTION |
| v. | ) |
| | ) CONSOLIDATED SHAREHOLDER |
| FIRST CONNECTICUT  BANCORP, INC., JOHN J. PATRICK, JR., RONALD A. BUCCHI, JOHN A. GREEN, JAMES T. HEALEY, JR., PATIENCE P. MCDOWELL, KEVIN S. RAY and MICHAEL A. ZIEBKA, | ) LITIGATION ) ) ) ) HEARING REQUESTED ) ) ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 3

I.      Plaintiff's Allegations Do Not State a Claim Under Section 14(a) or Rule 14a-9. ........... 3

        A.      Plaintiff Has Not Adequately Alleged That the Proxy Contained Any
                Misleading Statements. ........................................................................... 3

        B.      The Purportedly Omitted Financial Arcana Is Immaterial Because It Would
                Not Have Altered the "Total Mix" of Information Available to
                Shareholders. ........................................................................................ 8

        C.      Plaintiff Fails to Allege Any Causal Connection Between the Purported
                Omissions And His Alleged Damages. ................................................... 13

        D.      Plaintiff Fails to Plead Scienter, Which Is Required Under Section 14(a) To
                Coherently and Symmetrically Enforce the Exchange Act. ......................... 14

II.     As the Complaint Fails to State a Claim Under Section 14(a) or Rule 14a-9
        Thereunder, Plaintiff's Section 20(a) Claim Fails as a Matter of Law. .......................... 17

Conclusion ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrons v. Maree*,
  911 A.2d 805 (Del. Ch. 2006)...................................................................................10

*In re Acterna Corp. Sec. Litig.*,
  378 F. Supp. 2d 561 (D. Md. 2005).......................................................................2, 13

*Adams v. Standard Knitting Mills*,
  623 F.2d 422 (6th Cir. 1980) ...........................................................................3, 15, 16

*Assad v. DigitalGlobe, Inc.*,
  No. 17-cv-01097-PAB-NYW, 2017 U.S. Dist. LEXIS 113965 (D. Colo. July
  21, 2017) ................................................................................................................7, 12

*Azar v. Blount Int'l, Inc.*,
  No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017)............6

*Bluestone v. Sadove, et al.*,
  No. 3:18-cv-63 (E.D. Tenn. March 14, 2019) ..................................................15, 16

*BP Am. Prod. Co. v. Burton*,
  549 U.S. 84 (2006)...............................................................................................16, 17

*Burt v. Maasberg*,
  No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732 (D. Md. Mar. 31, 2013) ...........10

*Bushansky v. Remy Int'l, Inc.*,
  262 F. Supp. 3d 742 (S.D. Ind. 2017) ....................................................................11

*Calleros v. FSI Int'l, Inc.*,
  892 F. Supp. 2d 1163 (D. Minn. 2012)......................................................................6

*Campbell v. Transgenomic, Inc.*,
  No. 18-2198, 2019 U.S. App. LEXIS 6301 (8th Cir. 2019) .....................................8

*City of Hialeah Employees Retirement System v. FEI Co.*,
  289 F. Supp. 3d 1162 (D. Oregon 2018).....................................................................7

*Emory v. Duke*,
  No. 5:12-CV-5171, 2013 U.S. Dist. LEXIS 201903 (E.D. Ark. Mar. 19, 2013) .....................9

*Erickson v. Hutchinson Tech., Inc.*,
  158 F. Supp. 3d 751 (D. Minn. 2016).........................................................................6

*Goldfinger v. Journal Commc'n, Inc.*,
No. 15-C-12, 2015 U.S. Dist. LEXIS 61314 (E.D. Wis. May 8, 2015) .................6, 10, 11, 12

*Gottlieb v. Willis*,
No. 12-CV-2637, 2012 U.S. Dist. LEXIS 159343 (D. Minn. Nov. 7, 2012) ...................12, 13

*Himmel v. Bucyrus Int'l Inc.*,
No. 10-C-1104, 2014 U.S. Dist. LEXIS 50481 (E.D. Wis. Apr. 11, 2014)..................9, 10, 11

*In re HP Derivative Litig.*,
No. 5:10-cv-3608 EJD, 2012 U.S. Dist. LEXIS 137640 (N.D. Cal. Sept. 25, 2012) ..........................................................................................................................3, 9

*Hysong v. Encore Energy Partners LP*,
No. 11-781, 2011 U.S. Dist. LEXIS 130688 (D. Del. Nov. 10, 2011) ....................................5

*IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*,
No. 11-cv-222, 2012 U.S. Dist. LEXIS 36784 (D. Vt. Mar. 19, 2012)..................................17

*Indiana State District Council v. Omnicare, Inc.*,
719 F.3d 498 (6th Cir. 2013) ...............................................................................................15

*Kelly v. Robinson*,
479 U.S. 36 (1986).................................................................................................................16

*Knurr v. Orbital ATK, Inc.*,
276 F. Supp. 3d 527 (E.D. Va. 2017) ..................................................................................15

*Kuebler v. Vectren Corp.*,
No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 142524 (S.D. Ind. Aug. 22, 2018) ...................................................................................................6, 9, 12

*Malon v. Franklin Fin. Corp.*,
No. 3:14CV671-HEH, 2014 U.S. Dist. LEXIS 166675 (E.D. Va. Dec. 2, 2014) .................................................................................................................6, 9, 12

*McCreary v. Celera Corp.*,
No. 11-1618 SC, 2011 U.S. Dist. LEXIS 41639 (N.D. Cal. April 13, 2011) ...........................9

*In re Nat'l Research Corp. S'holder Litig.*,
No. 4:17-CV-441, 2018 U.S. Dist. LEXIS 173527 (D. Neb. Oct. 9, 2018) .............................5

*In re Netsmart Techs., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007)...........................................................................................7, 12

*In re Oracle Corp. Derivative Litig.*,
867 A.2d 904 (Del. Ch. 2004)................................................................................................10

*Orlando v. CFS Bancorp, Inc.*,
   No. 2:13-CV-261 JD, 2013 U.S. Dist. LEXIS 153917 (N.D. Ind. Oct. 28,
   2013) ...........................................................................................................................4

*Parshall v. HCSB Fin. Corp.*,
   No. 4:17-cv-01589-RBH, 2017 U.S. Dist. LEXIS 114948 (D.S.C. July 24,
   2017) ...........................................................................................................................6

*In re PEC Solutions, Inc. Sec. Litig.*,
   418 F.3d 379 (4th Cir. 2005) ....................................................................................13

*Republic Tech. Fund, Inc. v. Lionel Corp.*,
   483 F.2d 540 (2d Cir. 1973)........................................................................................7

*Ret. Sys. v. Inland W. Retail Real Estate Tr., Inc.*,
   635 F. Supp. 2d 783 (N.D. Ill. 2009) .........................................................................4

*Ret. Sys. v. Massaro*,
   702 F. Supp. 2d 1012 (N.D. Ill. 2010) ...................................................................4, 7

*Ret. Sys. v. Massaro*,
   736 F. Supp. 2d 1181 (N.D. Ill. 2010) .......................................................................5

*Rodenfels v. PDC Energy*,
   No. 16-cv-00251-PAB-STV, 2017 U.S. Dist. LEXIS 49248 (D. Colo. Mar.
   30, 2017) .....................................................................................................................7

*Rosenblatt v. Getty Oil Co.*,
   493 A.2d 929 (Del. 1985) .........................................................................................10

*Schulein v. Petroleum Dev. Corp.*,
   No. SACV 11-1981, 2012 U.S. Dist. LEXIS 191649 (C.D. Cal. June 25,
   2012) ...........................................................................................................................7

*Smith v. Robbins & Myers*,
   969 F. Supp. 2d 850 (S.D. Ohio 2013) .......................................................................7

*Teachers' Ret. Sys. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ....................................................................................13

*Trahan v. Interactive Intelligence Grp., Inc.*,
   308 F. Supp. 3d 977 (S.D. Ind. 2018) ......................................................................14

*In re Transocean Tender Offer Sec. Litig.*,
   455 F. Supp. 999 (N.D. Ill. 1978) ............................................................................10

*In re Trulia, Inc. S'holder Litig.*,
   129 A.3d 884 (Del. Ct. Ch. 2016)............................................................................10

*TSC Indus., Inc. v. Northway,*
   426 U.S. 438 (1976)...................................................................................................10

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B)..................................................................................1, 2, 4, 5

15 U.S.C. §78u-4(b)(4)...........................................................................................13

Defendants First Connecticut Bancorp, Inc. ("First Connecticut"), John J. Patrick, Jr., Ronald A. Bucchi, John A. Green, James T. Healey, Jr., Patience P. McDowell, Kevin S. Ray and Michael A. Ziebka (together, the "Defendants") respectfully submit this reply brief in further support of their Motion to Dismiss the Amended Class Action Complaint for Violation of the Securities Exchange Act of 1934 (the "Complaint" or "Compl.") (DCKT #29).

## INTRODUCTION

This case is about the merger of First Connecticut and People's United Bank, N.A. ("PUB") (the "Merger"), which was approved by over 95 percent of First Connecticut's shareholders who voted on the Merger and which valued First Connecticut's shares at a 24.3 percent premium. Prior to the shareholder vote, First Connecticut filed a proxy statement (the "Proxy") with the Securities and Exchange Commission that was more than 150 pages long. The Proxy provided shareholders with a tremendous amount of information about the Merger, including a variety of financial data from First Connecticut and PUB.

Plaintiff, however, claims that because the Proxy did not include one piece of financial minutia—after-tax cash flow projections—its detailed summaries of First Connecticut's Prospective Financial Information and a discounted cash flow ("DCF") analysis performed by First Connecticut's financial advisor were somehow materially misleading, in violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 thereunder. As Defendants demonstrated in their Memorandum of Law in Support of Their Motion to Dismiss (the "Motion to Dismiss" or "MTD"), Plaintiff's allegations fail to plausibly state even a single element of a claim under Section 14(a) or Rule 14a-9 thereunder.

The Private Securities Litigation Reform Act ("PSLRA") first requires Plaintiff to identify "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). The allegations in Complaint, however, do not satisfy

this first and most basic element of a Section 14(a) claim.  Plaintiff alleges that the entire summaries of First Connecticut's Prospective Information and a DCF analysis performed by First Connecticut's financial advisor were misleading without after-tax cash flow projections, but he pleads no facts explaining why those summaries are misleading.  Plaintiff does not identify any data or information in those summaries that (i) is inaccurate without after-tax cash flow projections or (ii) would change if the after-tax cash flow projections were disclosed.  In addition, numerous courts have held that after-tax cash flow projections and other types of financial arcana are immaterial as a matter of law.  Finally, Plaintiff entirely fails to plead scienter, and his bare allegation that First Connecticut was "undervalued" in the Merger does not adequately plead loss causation because it does not identify any causal connection between the alleged undervaluation of First Connecticut and the purported omission of after-tax cash flow projections.

Instead of arguing that he has satisfied these pleading requirements, Plaintiff's Opposition argues for a lower pleading burden.  He claims that the PSLRA "simply requires identification of the particular statements being challenged," that loss causation only requires an allegation that the merger consideration was inadequate and that he does not need to allege scienter.  (Opp., at 9, 21-24.)  Each of these arguments miss the mark.  The plain text of the PSLRA requires Plaintiff to identify "each statement alleged to have been misleading" *and* "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  Further, this Court has explained that "loss causation requires the plaintiff to point to some *causal link* between the alleged misrepresentations" or omissions "and an economic loss suffered by the plaintiff."  *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 587 (D. Md. 2005) (emphasis added).  And to effectuate a symmetrical and coherent regulatory scheme under the Exchange Act, scienter should be required under Section 14(a), as it is under Section 14(e), because if "similar standards of liability for both

proxy statements [Section 14(a)] and tender offers [Section 14(e)]" are not imposed, "some misleading solicitations which would trigger liability if shaped in the form of one transaction would be immune if shaped as the other, or vice versa." *Adams v. Standard Knitting Mills*, 623 F.2d 422, 431 (6th Cir. 1980). Finally, Plaintiff argues that the numerous decisions holding that financial minutia, such as after-tax cash flow projections, are immaterial as a matter of law are inapplicable because those decisions are based on Delaware law. They are not. In any event, this argument is a red herring since "Delaware courts apply the same standard of materiality used by federal courts for Section 14(a) claims." *In re HP Derivative Litig.*, No. 5:10-cv-3608 EJD, 2012 U.S. Dist. LEXIS 137640, at *35 (N.D. Cal. Sept. 25, 2012).

Accordingly, for each of the reasons explained herein and in the Motion to Dismiss, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the Complaint, with prejudice.

## ARGUMENT

**I.      Plaintiff's Allegations Do Not State a Claim Under Section 14(a) or Rule 14a-9.**

> **A.      Plaintiff Has Not Adequately Alleged That the Proxy Contained Any Misleading Statements.**

Plaintiff alleges vaguely and in conclusory fashion that the entire summaries of Piper Jaffray's ("Piper") DCF analysis and First Connecticut's Prospective Financial Information, which span over four pages, are misleading without after-tax cash flow projections. (Compl. ¶ 10.) Nowhere in the Complaint, however, does Plaintiff allege *how* those summaries are misleading without after-tax cash flow projections. That is, Plaintiff never alleges that any information in those summaries either is inaccurate without after-tax cash flow projections or would be different

if that information was disclosed.[1]  Instead, he simply argues "that defendants must tell him more about the subject of those statements."  *Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 U.S. Dist. LEXIS 153917, at *14 (N.D. Ind. Oct. 28, 2013).  Such allegations, however, fail to state a claim under Section 14(a) and Rule 14a-9 thereunder because they do not "identify[] a single untrue statement of material fact or identify[] any statements made to be misleading as a result of material omissions."  *Id.*

Plaintiff seeks to obviate this well-established legal principle by arguing that he should not have to explain *how* the summaries are misleading without after-tax cash flow projections because the PSLRA "simply requires identification of the particular statements being challenged."  (Opp., at 9.)  Plaintiff is wrong.  The PSLRA requires more.  The plain text of the PSLRA requires him to specifically plead not only "each statement alleged to have been misleading," but also "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  None of the cases Plaintiff cites in the Opposition support his argument that the PSLRA merely "requires the identification of the particular statements being challenged."  (Opp., at 9.); *Oakland Cty. Emps.' Ret. Sys. v. Massaro*, 702 F. Supp. 2d 1012, 1018 (N.D. Ill. 2010) (to state a claim under Section 14(a) and Rule 14a-9 thereunder, plaintiff must "explain why the statements are alleged to be false and/or misleading");[2] *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Inland W. Retail Real Estate*

---

[1] As Defendants set forth in their Motion to Dismiss, even if Plaintiff alleged that information in the summaries was inaccurate (and he does not), Plaintiff's allegations fail to state a claim because he does not allege subjective falsity, which is required where opinion statements (*e.g.*, Piper's fairness opinion) or forward-looking statements (*e.g.*, First Connecticut's Prospective Financial Information) are alleged to be false or misleading.  (MTD, at 13 n.5.)  Plaintiff cites no contrary authority in the Opposition.  (*See* Opp., at 20 n.8.)

[2] Plaintiff's reliance on *Massaro* is particularly misplaced.  In the decision Plaintiff cites, the court was "confronted not with the question of whether plaintiffs' section 14(a) claim could survive a 12(b)(6) motion, but rather whether the claim was so patently frivolous that [the court] should disregard it altogether when considering whether to abstain from exercising jurisdiction" under the

*Tr., Inc.*, 635 F. Supp. 2d 783, 792 (N.D. Ill. 2009) (to state a claim under Section 14(a) and Rule 14a-9 thereunder, plaintiff must "articulate the reasons why the statements are misleading").

Plaintiff asserts in the alternative that he has, in fact, adequately alleged how the summaries of Piper's DCF analysis and First Connecticut's Prospective Financial Information were misleading without after-tax cash flow projections.  (Opp., at 18-20.)  But Plaintiff argues only that "it is misleading to 'summarize' a valuation analysis by excising specific, readily-available key inputs that are necessary to properly assess the value of the company at issue."  (Opp., at 19.)  In other words, Plaintiff argues that it was *per se* misleading to omit after-tax cash flow projections from the Proxy.

This argument "incants the Section 14(a) and Rule 14a-9 elemental requirements," but "constitute[s] nothing more than a threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements."  *Hysong v. Encore Energy Partners LP*, No. 11-781, 2011 U.S. Dist. LEXIS 130688, at *22-23 (D. Del. Nov. 10, 2011) (quotations and citation omitted).  To state a claim under Section 14(a) and Rule 14a-9 thereunder, Plaintiff is required to plead *facts* explaining "the reason or reasons why" the summaries are "misleading" without after-tax cash flow projections.  15 U.S.C. § 78u-4(b)(1)(B).  Plaintiff, however, "allege[s] no facts showing that the proxy was misleading absent managements' cash flow projections—in other words, [he] point[s] to nothing in the proxy that's untrue or even misleading unless the cash flow projections are also included."  *In re Nat'l Research Corp. S'holder Litig.*, No. 4:17-CV-441, 2018 U.S. Dist. LEXIS 173527, at *10 (D. Neb. Oct. 9, 2018).  Instead, "[a]t best, the plaintiff[]

---

*Colorado River* doctrine.  *Oakland Cty. Emps.' Ret. Sys. v. Massaro*, 736 F. Supp. 2d 1181, 1185-86 (N.D. Ill. 2010).  The court later *granted* defendants' motion to dismiss, holding that "plaintiffs' claim under Section 14(a) plainly fails to state a viable claim."  *Id.* at 1185.  Plaintiff omits *Massaro*'s subsequent procedural history from the Opposition.

speculate[s] that a hypothetical shareholder would have wanted to know management's cash flow projections before deciding whether to tender the shareholder's proxy.  But that kind of blanket assertion does not live up to the particularity requirements of the Reform Act [the PSLRA]."  *Id.*

In addition, Plaintiff's argument is simply wrong.  "The Fourth Circuit has recognized 'the SEC has not imposed a duty to disclose financial projections in disclosure documents generally.'" *Parshall v. HCSB Fin. Corp.*, No. 4:17-cv-01589-RBH, 2017 U.S. Dist. LEXIS 114948, at \*15 (D.S.C. July 24, 2017) (quoting *Walker v. Action Indus., Inc.*, 802 F.2d 703, 709 (4th Cir. 1986)). Further, in their Motion to Dismiss, Defendants cited numerous cases holding that "a proxy statement need not include all of the inputs relied on by a financial advisor." *Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 142524, at \*9-10 (S.D. Ind. Aug. 22, 2018).[3]  Plaintiff makes no attempt to distinguish these authorities in the Opposition, and Plaintiff cites no case holding that it is *per se* misleading to omit after-tax cash flow projections from a proxy statement.  Indeed, none of Plaintiff's cases even included claims regarding the alleged omission of after-tax cash flow projections.[4]  Three of Plaintiff's cases addressed the

---

[3] *See also Goldfinger v. Journal Commc'n, Inc.*, No. 15-C-12, 2015 U.S. Dist. LEXIS 61314, at \*13 (E.D. Wis. May 8, 2015) ("There is no 'per se' duty to disclose financial projections given to and relied on by a financial advisor."); *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 U.S. Dist. LEXIS 166675, at \*18-19 (E.D. Va. Dec. 2, 2014) (explaining that courts have "consistently held" that neither Section 14(a) nor Rule 14a-9 thereunder requires the disclosure of "information so extensive and detailed as to permit stockholders to make an independent determination of fair value or recreate the analysis of a financial advisor") *Erickson v. Hutchinson Tech., Inc.*, 158 F. Supp. 3d 751, 758 (D. Minn. 2016) (holding that a shareholder "is entitled only to a 'fair summary' of a financial advisor's work" and "[n]otably, the fact that the financial advisors may have considered certain nondisclosed information does not alter this analysis" (quotations and citations omitted)); *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1175 (D. Minn. 2012) (same).

[4] *See Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at \*7-8 (D. Or. Mar. 20, 2017) ("Plaintiffs allege that the September Projections," which were not disclosed in the proxy, "more accurately reflected Blount's short- and long-term prospects than did later projections, and that the November and December Projections were misleading as to

omission of other financial arcana utilized by financial advisors, but none created a *per se* rule that such financial minutia must be disclosed in proxy statements.   In *City of Hialeah Employees Retirement System v. FEI Co.*, 289 F. Supp. 3d 1162 (D. Oregon 2018), plaintiff alleged that defendant's financial advisor used an "improperly high" discount rate in its DCF analysis.  289 F. Supp. 3d at 1179.   *Hialeah*, however, provides no support to Plaintiff because the court *granted* defendant's motion to dismiss, holding that while a summary of a financial advisor's analysis could "be false or misleading if underlying assumptions or key inputs are omitted or misrepresented . . . that is not the case here" because "Plaintiff has not sufficiently alleged that the inputs and assumptions relied upon for the fairness analysis . . . were inaccurate or misleading" or that "the Fairness Opinion based upon them was materially misleading."  289 F. Supp. 3d at 1179-80.  Plaintiff's other two cases are inapplicable because they addressed cash out mergers,[5] and "[w]hile these cases indicate that financial projections are particularly important in the context of a cash-out merger, they do not create a *per se* rule that financial projections and their underlying financial information are material or must be disclosed."  *Assad v. DigitalGlobe, Inc.*, No. 17-cv-01097-PAB-NYW, 2017 U.S. Dist. LEXIS 113965, at *15 (D. Colo. July 21, 2017).

---

management's true views of the Company's prospects."); *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1981 AG (ANx), 2012 U.S. Dist. LEXIS 191649, at *16 (C.D. Cal. June 25, 2012) ("Plaintiffs allege two basic categories of misleading Proxy statements:  (1) the Partnerships' ability to finance new operations, and (2) the value of the Partnerships' Proven and Unproven Reserves."); *Rodenfels v. PDC Energy*, No. 16-cv-00251-PAB-STV, 2017 U.S. Dist. LEXIS 49248, at *5-7 (D. Colo. Mar. 30, 2017) (same); *Massaro*, 702 F. Supp. 2d at 1186 ("Plaintiffs allege that the proxy statements . . . were materially false and misleading because" they "did not disclose the fact that PwC knew about [defendant's] improper accounting"); *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 542 (2d Cir. 1973) (plaintiff's "principal claim . . . is that the interim statement (and hence the proxy materials and registration statement) was misleading in that it artificially inflated earnings").

[5] *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007); *Smith v. Robbins & Myers*, 969 F. Supp. 2d 850 (S.D. Ohio 2013).

The Eighth Circuit's recent decision in *Campbell v. Transgenomic, Inc.*, No. 18-2198, 2019 U.S. App. LEXIS 6301 (8th Cir. 2019), also provides no support to Plaintiff.  In *Campbell*, plaintiff alleged that the proxy statement was misleading because it omitted defendant's "projected net income/loss."   2019 U.S. Dist. App. LEXIS 6301, at *4.   The Eighth Circuit held that "the materiality of the omission was improperly resolved as a matter of law" by the district court because "[t]he disclosure of [defendant's] net income/loss figures could have significantly altered the total mix" of information available to shareholders.  *Id.*, at *6-7.  That decision was grounded in Eighth Circuit precedent holding that net income/loss are uniquely important financial figures. *See id.*, at *5 ("Net income 'may be of more significance to investors' than revenue." (quoting *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830 (8th Cir. 2003)); *id.*, at *5-6 ("This court has considered net income to be among the three most valuable figures in determining the fairness of an acquisition under the Clayton Act."  (citing *Miss. River Corp. v. FTC*, 454 F.2d 1083, 1086 (8th Cir. 1972)).  Here, Plaintiff does not allege that the Proxy omitted net income/loss projections (indeed, the Proxy disclosed net income/loss projections (Compl. ¶ 40)), nor does Plaintiff identify any Fourth Circuit precedent indicating that, like net income projections in the Eighth Circuit, after-tax cash flow projections are considered uniquely important financial figures in stock-for-stock mergers.

For each of these reasons, Plaintiff has failed to plausibly allege that the Proxy contained any statements rendered misleading by the purported omission of after-tax cash flow projections.

### B.     The Purportedly Omitted Financial Arcana Is Immaterial Because It Would Not Have Altered the "Total Mix" of Information Available to Shareholders.

Numerous courts have held that after-tax cash flow projections and other financial arcana utilized by financial advisors are immaterial as a matter of law because Section 14(a) and Rule 14a-9 thereunder do not require the "disclos[ure] [of] all data underlying" the summaries of

valuation analyses prepared by financial advisors "such that a shareholder can make an independent determination of value." *Himmel v. Bucyrus Int'l Inc.*, No. 10-C-1104, 2014 U.S. Dist. LEXIS 50481, at *58 (E.D. Wis. Apr. 11, 2014); (MTD, at 15-19.) Instead, shareholders are "only entitled to a 'fair summary' of the financial advisor's work." *Kuebler*, 2018 U.S. Dist. LEXIS 142524, at *10 (quotations and citations omitted). That is exactly what Plaintiff received in this case. The Proxy was over 150 pages long, and it included a detailed, 10 page summary of Piper's analyses, as well as a copy of the fairness opinion letter Piper delivered to First Connecticut's Board of Directors. (MTD, at 18-19.) When such a summary is provided to shareholders, courts have "consistently held" that neither Section 14(a) nor Rule 14a-9 thereunder requires the disclosure of financial arcana underlying the summarized valuations, such as after-tax cash flow projections, because this type of financial minutia is immaterial, as a matter of law. *Malon*, 2014 U.S. Dist. LEXIS 166675, at *18-19.

In the Opposition, Plaintiff attempts to distinguish away the directly on-point authorities cited by Defendants in their Motion to Dismiss by arguing that the "fair summary" rule is inapplicable to claims under Section 14(a) and Rule 14a-9 thereunder because it "emanate[s] from Delaware state cases addressing . . . *Delaware law*." (Opp., at 15 (emphasis in original).) To begin with, this argument is a red herring because "Delaware courts apply the same standard of materiality used by federal courts for Section 14(a) claims." *In re HP Derivative Litig.*, 2012 U.S. Dist. LEXIS 137640, at *35.[6] In addition, the "fair summary" rule, which numerous federal courts

---

[6] *Emory v. Duke*, No. 5:12-CV-5171, 2013 U.S. Dist. LEXIS 201903, at *8-9 (E.D. Ark. Mar. 19, 2013) ("Delaware common law also recognizes claims based on misleading proxies, e.g., claims for breach of fiduciary duty, and adheres to the same materiality standard that is imposed upon 14(a) claims by federal law."); *McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 U.S. Dist. LEXIS 41639, at *13 (N.D. Cal. April 13, 2011) ("Delaware common law recognizes claims based on material omissions in proxies similar to the plaintiff's Exchange Act claims," and "Delaware

have applied to claims under Section 14(a) and Rule 14a-9 thereunder (MTD, at 17-19), is firmly grounded in the standard for materiality under the Exchange Act.  As this Court has explained, an omitted fact is material under the federal securities laws only if "'the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"  *Burt v. Maasberg*, No. ELH-12-0464, 2013 U.S. Dist. LEXIS 46732, at *85-86 (D. Md. Mar. 31, 2013) (quoting *TSC Indus., Inc. v. Northway*, 426 U.S. 438, 449 (1976)).

The U.S. Supreme Court has warned, however, that "if the standard of materiality" under Section 14(a) and Rule 14a-9 thereunder "is unnecessarily low . . . management's fear of exposing itself to substantial liability may cause it to simply bury the shareholders in an avalanche of trivial information."  *TSC*, 426 U.S. at 448-49.  For this reason, a "fair summary" of valuation analyses is all that Section 14(a) and Rule 14a-9 thereunder requires because "if the standard for materiality were so low" that financial arcana, such as "cash flow projections," were required to be disclosed, shareholders would, indeed, be buried in "'an avalanche of trivial information,'" which would subvert the purpose of Section 14(a)'s disclosure requirements and conflict with the U.S. Supreme Court's decision in *TSC*.  *Goldfinger*, 2015 U.S. Dist. LEXIS 61314, at *12, 14; *see also Himmel*,

_____

courts apply the same standard for materiality as the Supreme Court has recognized for Exchange Act claims."); *In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1011 n.14 (N.D. Ill. 1978) ("Defendants neither contend, nor could they successfully do so, that the standards for determining materiality under Delaware and federal law are different."); *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944-45 (Del. 1985) (adopting and applying the materiality test announced by the U.S. Supreme Court in *TSC Industries v. Northway, Inc.*, 426 U.S. 438 (1976)); *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 899 (Del. Ct. Ch. 2016) ("Delaware has adopted the standard of materiality used under the federal securities laws."); *Abrons v. Maree*, 911 A.2d 805, 812-13 (Del. Ch. 2006) ("The objective materiality standard applied by Delaware courts is derived from that articulated by the United States Supreme Court in *TSC Industries, Inc. v. Northway*.  As such, Delaware mirrors federal law on materiality."); *In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004) ("The definition of materiality used by Delaware courts is identical to that used by federal courts.").

2014 U.S. Dist. LEXIS 50481, at \*58 ("Disclosures in proxy statements need not be so detailed that they no longer serve their purpose.").

Plaintiff next wrongly argues that several of the cases cited by Defendants are inapplicable because they arose in the context of motions for preliminary injunctions, rather than motions to dismiss.  (Opp., at 17-18.)  Plaintiff, however, fails to identify anything from those decisions indicating that those courts would have reached a different conclusion on materiality upon a motion to dismiss.  Moreover, Defendants have also cited several decisions granting motions to dismiss claims under Section 14(a) and Rule 14a-9 thereunder, and holding that financial arcana underlying financial advisor's valuation analyses are immaterial, as a matter of law.  *See, e.g.*, *Goldfinger*, 2015 U.S. Dist. LEXIS 61314, at \*12-14 (granting motion to dismiss and holding that "cash flow projections" were immaterial as a matter of law); *Himmel*, 2014 U.S. Dist. LEXIS 50481, at \*58-60 (granting motion to dismiss claims under Section 14(a) and Rule 14a-9 thereunder because data underlying financial advisor's analyses is immaterial).

Finally, Plaintiff stretches to argue that the summaries of Piper's DCF analysis and First Connecticut's Prospective Financial Information in the Proxy "cannot be deemed a 'fair summary' under any legitimate definition of the term" because "there is nothing 'fair' about summaries of a financial advisor's valuation analyses or a company's projections that fail to include the projections the advisor actually utilized for its analyses."  (Opp., at 17.)  Plaintiff, however, fails to address the significant contrary authority cited in Defendants' Motion to Dismiss that rejects that theory.  (MTD, at 15-19.)  As those cases correctly explain, "[t]he essence of a fair summary is an accurate description of the advisor's methodology and key assumptions, rather than an abundance of financial data."  *Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742, 750 (S.D. Ind. 2017).  As such, "a proxy statement need not include all of the inputs relied on by a financial

advisor." *Kuebler*, 2018 U.S. Dist. LEXIS 142524, at *9-10.[7]  Indeed, another court in this circuit has expressly held that where, as here, "a fair summary of the data underlying the conclusion of [defendant's] financial advisor" is provided in the Proxy, neither Section 14(a) nor Rule 14a-9 thereunder requires the disclosure of "unlevered free cash flows . . . [the] financial advisor relied upon . . . in performing a discounted cash flow analysis" because this type of financial "minutia" is "too abstract to enlighten the typical stockholder," and, thus, immaterial.  *Malon*, 2014 U.S. Dist. LEXIS 166675 at *19-21, 30.

The sole decision Plaintiff cites in support of his argument, *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007), is inapplicable.  (Opp., at 17.)  The merger between First Connecticut and PUB was a stock-for-stock merger, and "as other courts have recognized, th[e] line of reasoning" from *Netsmart* "applies to cash-out mergers, not stock-for-stock mergers." *Goldfinger*, 2015 U.S. Dist. LEXIS 61314, at *12.[8]  In a cash-out merger, financial "projections are of more immediate importance" because shareholders are "confronted with the choice of accepting a one-time payment of cash," and their "decision turns almost entirely on the current value of the stock, which . . . should be premised on the expected future cash flows of the corporation." *Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 U.S. Dist. LEXIS 159343, at *15 (D. Minn. Nov. 7, 2012) (quotations and citation omitted).  Outside of the cash-out merger context, however, while financial projections theoretically "might . . . be helpful" to shareholders,

---

[7] *See supra* n.3 (collecting cases).

[8] *See also Assad*, 2017 U.S. Dist. LEXIS 113965, at *15 (explaining that while *Netsmart* might "indicate that financial projections are particularly important in the context of a cash-out merger, [it] does not create a *per se* rule that financial projections and their underlying financial information are material or must be disclosed" in stock-for-stock mergers); *Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 U.S. Dist. LEXIS 159343, at *14-16 (D. Minn. Nov. 7, 2012) (holding that *Netsmart* was inapplicable because "[t]his . . . is not a cash-out merger case").

"they remain individual pieces of an overall financial picture," rather than the sole basis for the shareholders' decision. *Id.*

For each of these reasons, the purportedly omitted after-tax cash flows are immaterial, as a matter of law.

### C.   Plaintiff Fails to Allege Any Causal Connection Between the Purported Omissions And His Alleged Damages.

The PSLRA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate" Section 14(a) and Rule 14a-9 thereunder "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4). "Because the PSLRA explicitly requires that the plaintiff *prove* loss causation, the general rules of pleading require that the plaintiff also *plead* it in his complaint." *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007) (emphasis in original).

Here, Plaintiff erroneously argues that he has adequately pled loss causation because the Complaint "alleges that the Merger Consideration undervalued shareholders' shares in light of the Company's strong stand-alone growth prospects and valuations issued by reputable financial analysts." (Opp., at 21.) As this Court has explained, "loss causation requires the plaintiff to point to some *causal link* between the alleged misrepresentations" or omissions "and an economic loss suffered by the plaintiff." *In re Acterna*, 378 F. Supp. 2d at 587 (emphasis added). That is, loss causation requires the plaintiff to "demonstrate that the defendant's misrepresentation" or omission "was a substantial *cause* of the loss by showing a direct or proximate relationship between the loss and the misrepresentation" or omission. *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005) (emphasis added) (quotations and citation omitted). Nowhere in the Complaint does Plaintiff plead facts alleging how the purported omission of after-tax cash flow projections *caused* First Connecticut's shareholders to allegedly receive inadequate consideration for their

13

shares.   Accordingly, Plaintiff has failed to adequately plead loss causation.   *See Trahan v. Interactive Intelligence Grp., Inc.*, 308 F. Supp. 3d 977, 1000 (S.D. Ind. 2018) (dismissing claims under Section 14(a) and Rule 14a-9 because the "complaint fails to allege loss causation simply by pleading" that the merger consideration reflected a "depressed" share price).

In addition, as Defendants explained in their Motion to Dismiss (MTD, at 21-22), Plaintiff also fails to plausibly allege loss causation because his allegations merely "speculate[] that, absent the misleading[] . . . Proxy Statement, the shareholders would not have approved the Merger in hope that [First Connecticut] would prove more valuable as a going concern than the Merger consideration implied."   *Trahan*, 308 F. Supp. 3d at 1000.   Based on these allegations, "approval of the Merger can only have proximately caused economic loss if the shareholders' hope would have been *realized*, and [Plaintiff] has not plausibly alleged that it would have been" because he has not alleged that there was "a definite, immediately available, superior alternative to the Merger consideration (a higher competing offer, for example)."   *Id.*   Instead, Plaintiff's loss causation theory entirely "depends on the marketplace eventually valuating" First Connecticut's stock "at higher than" the merger consideration "at some indeterminate future date when [Plaintiff] still held his shares and was willing to sell them."   *Id.*   Thus, Plaintiff "has alleged no more than a speculative possibility that he was economically injured by any misrepresentation in connection with the Merger[,] [a]nd that is not enough" to plausibly allege loss causation.   *Id.*

For each of these reasons, Plaintiff has failed to plausibly allege loss causation, which is an essential element of his claims under Section 14(a) and Rule 14a-9 thereunder.   (MTD, at 20.)

### D.   Plaintiff Fails to Plead Scienter, Which Is Required Under Section 14(a) To Coherently and Symmetrically Enforce the Exchange Act.

Neither Section 14(a) nor Rule 14a-9 thereunder specifies the state of mind required for liability, and "both the Supreme Court and the Fourth Circuit have expressly declined to determine

the state of mind of a defendant required to establish § 14(a) liability." *Knurr v. Orbital ATK, Inc.*, 276 F. Supp. 3d 527, 535 (E.D. Va. 2017).  As to tender offers, however, which are regulated by Section 14(e) of the Exchange Act, the overwhelming majority of courts, including this Court, have held that scienter—not merely negligence—is required to establish liability.  (MTD, at 22.) And since Congress "expressed the desire that proxy statements and tender offers be governed by the same rules and regulations," which "would logically extend to standards of liability," the Sixth Circuit has explained that "there is a strong policy reason for imposing" a scienter requirement under Section 14(a).  *Adams v. Standard Knitting Mills*, 623 F.2d 422, 430 (6th Cir. 1980).[9]

Unable to dispute the persuasiveness of *Adams*, Plaintiff instead argues that Defendants' reliance on *Adams* is "misplaced" because the "*Adams* Court's holding plainly did not implicate claims against the type of Defendants in this case—corporations, their officers and directors." (Opp., at 24.)  Like many of Plaintiff's other arguments, this too is a red herring.  As the *Adams* court states, it did not "decide the standard of liability of the corporate issuer of proxy material" because that issue was not before the court.  *Id*. at 428.  That does not diminish the persuasiveness of the reasoning from *Adams* that "there is a strong policy reason for imposing" a scienter requirement under Section 14(a).  *Id.* at 430; *see also* Order, at 11, *Bluestone v. Sadove, et al.*, No. 3:18-cv-63 (E.D. Tenn. March 14, 2019), ECF No. 73 (*Bluestone*) ("Plaintiff argues the holding of *Adams* was limited to outside accountants and should not apply to corporate issuers like

---

[9] The Sixth Circuit similarly confirmed that scienter is required under Section 14(a) in *Indiana State District Council v. Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013), where it stated that "[i]n this Circuit, § 14(a) does in fact require proof of scienter to state a claim."  719 F.3d at 507 n.3, *vacated and remanded on other grounds sub nom.* 135 S. Ct. 1318 (2015); (MTD, at 24.).  Plaintiff attempts to avoid *Omnicare* by calling the Sixth Circuit's statement on scienter "clear dictum." (Opp., at 24.)  But "[d]icta or no, the statement could hardly be clearer," and it provides "a straightforward indication" of how the Sixth Circuit "may read *Adams* when" it has occasion to revisit the liability of corporate issuers and their directors and officers under Section 14(a). (*Bluestone*, at 15.)

Defendants here. . . . However, the court [in *Adams*] . . . broadly ground[ed] its holding in the legislative history of the [Exchange] Act and amendments thereto.").

Moreover, Plaintiff is wrong. *Adams* directly implicates the claims against Defendants Ronald A. Bucchi, John A. Green, James T. Healey, Jr., Patience P. McDowell, Kevin S. Ray and Michael A. Ziebka, all of whom were outside directors of First Connecticut. As a Sixth Circuit district court recently held, the "reasoning and expansive language" from *Adams* "leaves little room for the distinction, now urged by Plaintiff, between outside directors and outside accountants." (*Bluestone*, at 11.)

Nevertheless, Plaintiff urges this Court to adopt a negligence standard for Section 14(a) because "unlike Section 14(e), Rule 14a-9 does not contain the words 'fraudulent, deceptive, or manipulative.'" (Opp., at 23-24.) Plaintiff's argument, however, ignores well-established rules of statutory interpretation. As Defendants explained in their Motion to Dismiss, although Sections 14(a) and (e) are not identical, "the text is only the starting point" for statutory interpretation and courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the *whole law*, and to its *object and policy*." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986) (quotations and citations omitted) (emphasis added). In particular, "a statute should be read where possible as effectuating 'a symmetrical and coherent regulatory scheme.'" *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 99 (2006) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Here, if "similar standards of liability for both proxy statements [Section 14(a)] and tender offers [Section 14(e)]" are not imposed, "some misleading solicitations which would trigger liability if shaped in the form of one transaction would be immune if shaped as the other, or vice versa." *Adams*, 623 F.2d at 431. Thus, the only way to effectuate a "symmetrical and

coherent regulatory scheme" under the federal securities laws is for this Court to hold that scienter is required under Section 14(a), just as it is required under Section 14(e). *Burton*, 549 U.S. at 99.

The Opposition makes no attempt to dispute these principles of statutory interpretation nor does it explain how requiring scienter for tender offers but not proxy solicitations either serves the Exchange Act's purpose or is consistent with a coherent regulatory scheme under the Exchange Act. Accordingly, this Court should hold that scienter is required under Section 14(a), which would be still another separate reason requiring the dismissal of this case, since it is undisputed that Plaintiff has not alleged scienter.

## II. As the Complaint Fails to State a Claim Under Section 14(a) or Rule 14a-9 Thereunder, Plaintiff's Section 20(a) Claim Fails as a Matter of Law.

For the reasons explained herein and in Defendants' Motion to Dismiss, the Complaint fails to adequately allege a claim under Section 14(a) or Rule 14a-9 thereunder. As such, Plaintiff's claims under Section 20(a) of the Exchange Act fail as a matter of law and should be dismissed. *See, e.g.*, *IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-cv-222, 2012 U.S. Dist. LEXIS 36784, at *44-46 (D. Vt. Mar. 19, 2012) (dismissing Section 20(a) claims because "the court has concluded that Plaintiffs have failed to state a claim for a violation of section 14(a)" and "[w]ithout this primary violation, Plaintiffs' Amended Complaint fails to set forth one of the prima facie elements of a cause of action under section 20(a)").

### CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss, and dismiss the Complaint, with prejudice.

\*       \*       \*

Pursuant to D. Md. Local Rule 105, Defendants respectfully request a hearing on their Motion.

17

Respectfully submitted this 29th day of March, 2019.

**ALSTON & BIRD**

*/s/ Emily S. Costin*

Emily S. Costin (D. Md. Bar No. 17436)
Alston & Bird
950 F Street, NW
Washington, D.C. 20004-1404
Telephone: (202) 239-3695
Facsimile: (202) 239-3333
emily.costin@alston.com

Robert R. Long (*admitted pro hac vice*)
Elizabeth Gingold Clark (*admitted pro hac vice*)
Alston & Bird
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 253-8332
robert.long@alston.com
elizabeth.clark@alston.com

*Counsel for Defendants First Connecticut  Bancorp, Inc., John J. Patrick, Jr., Ronald A. Bucchi, John A. Green, James T. Healey, Jr., Patience P. McDowell, Kevin S. Ray and Michael A. Ziebka*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2019, I caused a true copy of **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** to be filed through the Court's ECF system which will automatically serve a copy upon counsel of record.

ALSTON & BIRD

*/s/ Emily S. Costin*
Emily S. Costin (D. Md. Bar No. 17436)
Alston & Bird
950 F Street, NW
Washington, D.C. 20004-1404
Telephone: (202) 239-3695
Facsimile: (202) 239-3333
emily.costin@alston.com

*Counsel for Defendants First Connecticut Bancorp, Inc., John J. Patrick, Jr., Ronald A. Bucchi, John A. Green, James T. Healey, Jr., Patience P. McDowell, Kevin S. Ray and Michael A. Ziebka*