# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SELWYN KARP, Individually and On Behalf of All Others Similarly Situated <br><br> Plaintiff, <br><br> v. <br><br> FIRST CONNECTICUT BANCORP, INC., *et al.*, <br><br> Defendants. | * <br> * <br> * <br> * <br> * Civil Action No.: RDB-18-2496 <br> * <br> * CONSOLIDATED <br> * CLASS ACTION <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiff Selwyn Karp ("Karp" or "Lead Plaintiff") brings this purported class action on behalf of himself and other former public shareholders (collectively, "Plaintiffs") of First Connecticut Bancorp, Inc. ("First Connecticut" or "the Company") against First Connecticut and the former members of the Company's board of directors: John J. Patrick, Jr.; Robald A. Bucchi; John A. Green; James T. Healey Jr.; Patience P. McDowell; Kevin S. Ray; and Michael A. Ziebka (the "Board" or the "Individual Defendants") (collectively, "Defendants"), alleging violations of federal securities laws. (Consol. Am. Compl., ECF No. 29.) Plaintiffs bring this federal class action for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of First Connecticut by People's United Financial, Inc. ("People's United"). (*Id.* at ¶ 1.)

Currently pending before this Court is Defendants' Motion to Dismiss (ECF No. 30). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion shall be DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

On June 18, 2018, First Connecticut and People's United entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which First Connecticut shareholders would receive 1,725 shares of People's United common stock for each share of First Connecticut common stock they owned, leaving People's United as the surviving corporation. (Consol. Am. Compl. ¶¶ 2, 17, ECF No. 29.) Although First Connecticut reported good 2017 financial results and a strong first quarter of 2018, the Board determined to sell the company and responded eagerly to People's United's initial outreach in April 2018. (*Id.* at ¶¶ 29-31.) The sales process was finalized in only two months. (*Id.* at ¶ 31.) Plaintiffs allege that the Board rushed the sale and accepted consideration for the merger that undervalued First Connecticut shareholders' shares. (*Id.* at ¶¶ 29-31, 34.)

Specifically, Plaintiffs allege that Defendants negligently allowed a Proxy[1] to be disseminated to the Company's shareholders that omitted material information—Cash Flow Projections—that would have alerted the shareholders to the fact that the consideration being offered for the merger was inadequate. (*Id.* at ¶¶ 34, 36.) According to Plaintiffs, the missing free cash flow projections were the single most important financial metric for valuing a company and its stock in connection with a merger and are generally a staple in proxy statements related to corporate mergers. (*Id.* at ¶¶ 39-47.) The lack of these cash flow projections thus resulted in the Proxy containing a materially incomplete and misleading picture of First Connecticut's valuation and financial prospects. (*Id.* at ¶¶ 34, 36, 48.) The Proxy, which was filed with the SEC, recommended that the shareholders vote in favor of the merger, but because it lacked material information about the intrinsic value of the Company, the shareholders were unable to make an informed decision. (*Id.* at ¶ 35.)

Defendants initially authorized the filing of the Proxy on July 25, 2018. (*See* Compl. ¶ 4, ECF No. 1.) Karp filed his Complaint for Violation of the Securities Exchange Act of 1934 (ECF No. 1) on August 14, 2018, initially seeking to enjoin the merger.[2] (*See id.* at ¶ 7; Mot. Prelim. Inj., ECF No. 13.) The allegedly misleading Proxy was filed with the SEC on August 22, 2018. (Consol. Am. Compl. ¶¶ 3, 35, ECF No. 29.) On September 25, 2018, a special meeting of First Connecticut's shareholders was held to vote on the merger. (*Id.* at ¶ 11.) The meeting having taken place, the parties entered into a Stipulation on September 27, 2018, under which Karp agreed to withdraw the Injunction Motion as moot, file an Amended

---

[1] Schedule 14A Definitive Proxy Statement. (Consol. Am. Compl. ¶ 3, ECF No. 29.)
[2] A related case, *Constance Lagace v. First Connecticut Bancorp. Inc., et al.*, RDB-18-2541, was filed on August 17, 2018.

3

Complaint, and the parties set a briefing schedule for the Defendants' intended motion to dismiss. (Stip., ECF No. 17; Order, ECF No. 18.) The merger was consummated on October 1, 2018. (Consol. Am. Compl. ¶ 11, ECF No. 29.) Karp filed a Consolidation Motion, under which he would be appointed as Lead Plaintiff, which this Court granted on November 7, 2018, consolidating the two cases. (*See* ECF Nos. 21, 23.)

The Consolidated Amended Complaint (ECF No. 29) was filed on December 17, 2018 alleging two causes of action: Count I, Against all Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder; and Count II, Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act. The pending Motion to Dismiss was filed on January 29, 2019 and is fully briefed and ripe for decision. (*See* ECF Nos. 30, 31, 35.) For the reasons that follow, Defendants' dismissal motion shall be DENIED.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require that complaints in civil actions be alleged with greater specificity than previously was required. While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678. A complaint must set forth "enough factual matter (taken as true) to suggest"

a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

This Court has noted that a claim for securities fraud must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b). *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 634 (D. Md. 2010). Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

The Private Securities Litigation Reform Act further requires a securities fraud claim to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1), (b)(2)). These heightened pleading standards in the securities fraud context are demanding but were implemented because Congress recognized that there was potential for abuse. *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008).

# ANALYSIS

## I.  Count I – Section 14(a) & Rule 14a–9

The Exchange Act Section 14(a) and its implementing regulation, Rule 14a–9, establish liability for material misstatements or omissions in a proxy statement. 15 U.S.C. § 78n(a)(1); 17 C.F.R. § 240.14a9(a). Plaintiffs allege that the Defendants violated Section 14(a) and Rule 14a–9 by omitting material information in the Proxy that was provided to shareholders to obtain approval of the merger. (Consol. Am. Compl. ¶¶ 59-68, ECF No. 29.) Defendants contend that Plaintiffs have failed to plead any element of Count I with the particularity required under the Private Securities Litigation Reform Act ("PSLRA"). While not directly addressed by Courts of Appeal or the Supreme Court, courts have generally concluded that Section 14(a) allegations must identify with precision any misleading statements or omitted material facts pursuant to the PSLRA, 15 U.S.C. § 78u–4(b)(1). *See, e.g.*, *Burt v. Maasberg*, Civil Action No. ELH–12–0464, 2013 WL 1314160, at *1 (D. Md. Mar. 31, 2013) (noting that although the matter has not been addressed by the United States Court of Appeals for the Fourth Circuit, the approach comports with the plain language of the PSLRA); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 286 (S.D.N.Y. 2010) (collecting cases).

To assert a claim for a violation of Section 14(a), a plaintiff must allege "that (1) the proxy statement contained a material misrepresentation or omission (2) that caused the plaintiff injury and that (3) the proxy solicitation was an essential link in the accomplishment of the transaction" that produced the injury. *Hayes v. Crown Cent. Petrol. Corp.*, 78 F. App'x 857, 861 (4th Cir. 2003) (*per curiam*) (citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir.

1992)). "The second and third elements have been termed 'loss causation' and "transaction causation,' respectively." *In re AGNC Inv. Corp.*, Civil Action No. TDC-16-3215, 2018 WL 3239476, at *3 (D. Md. Jul 3, 2018) (citations omitted).

Notably, "both the Supreme Court and the Fourth Circuit have expressly declined to determine the state of mind of a defendant required to establish § 14(a) liability." *Knurr v. Orbital ATK Inc.*, 276 F. Supp. 3d 527, 535 (E.D. Va. 2017) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444 n.7 (1976) and *Hayes*, 78 F. App'x at 864 n.1); *see also In re Willis Towers Watson plc Proxy Litig.*, — F.3d —, 2019 WL 4125227, at *8 (4th Cir. Aug. 30, 2019) (recognizing split of authority, citing cases). In this case, for purposes of this dismissal motion, this Court shall accept allegations of negligence to suffice. *See Knurr*, 276 F. Supp. 3d at 539-40. This Court concludes that Plaintiffs have sufficiently alleged negligence, including allegations that each Individual Defendant was negligent. (*See* Consol. Am. Compl. ¶¶ 64-67, ECF No. 29.)

This Court shall address each of the elements in turn.

### A. Material Omission

Under the first element, an omission in a proxy statement is not material unless "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus.*, 426 U.S. at 449. Doubts about the criticality of information omitted are common, but "in view of the prophylactic purpose of the Rule and the fact that the content of the proxy statement is within management's control, it is appropriate that these doubts be resolved in favor of those the statute is designed to protect," i.e., the shareholders. *Id.* at 448.

Plaintiffs allege that the omission of cash flow projections "rendered specific portions of the Proxy misleadingly incomplete." (Consol. Am. Compl. ¶ 36, ECF No. 29.) Specifically, Plaintiffs allege that "Defendants conspicuously withheld any form of First Connecticut's after-tax cash flow projections from Company shareholders despite electing to include a table of projections . . . ." (*Id.* at ¶ 39.) They add that the projections that were disclosed were not sufficient because "[w]ell settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected Net Income," explaining why cash flows are more accurate. (*Id.* at ¶¶ 40-41 (citing Cornelius J. Casey and Norman J. Bartczak, *Cash Flow—It's Not the Bottom Line*, Harvard Bus. Rev. (1984) and Pablo Fernández, *Cash flow is a Fact. Net income is just an opinion*, (October 17, 2008), http://csinvesting.org/wp-content/uploads/2015/02/Cash-Flow-vs.-NI.pdf, also found as *Valuation Methods and Shareholder Value Creation*, Chapter 9 Cash Flow and Net Income, 2002 Academic Press, San Diego, CA).) Further, Plaintiffs allege that the shareholders were provided only projections for the fiscal years 2018 and 2019, which is less than half the amount of time of cash flows available (2018-2023), making it impossible for the shareholders to compare any of the other projection metrics to the cash flow for the entire time period. (*Id.* at ¶ 42.)

Further, Plaintiffs allege that there were no cash flow projections provided for People's United, which was material information because without the projections, it was impossible for shareholders to compare the value of their shares against of the value of People's United's shares to determine if the merger consideration was adequate. (*Id.* at ¶¶ 44-47.) The omission of the cash flow projections made specific portions of the Proxy misleadingly incomplete,

specifically: the summary of the financial advisor's *Discounted Cash Flow Analysis* on pages 55-56 of the Proxy (*id.* at ¶¶ 48-53); and the summary of First Connecticut's financial projections on page 58 of the Proxy (*id.*at ¶¶ 54-57.)

Defendants argue that an omission is only a violation when the SEC regulations "require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." (Mot. Mem. 12, ECF No. 30-1 (quoting *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002).) Certainly, the Fourth Circuit has recognized that "the SEC has not imposed a duty to disclose financial projections in disclosure documents generally." *Walker v. Action Indus., Inc.*, 802 F.2d 703, 709 (4th Cir. 1986). Rather, it depends upon the circumstances of the particular case. *Id.* at 710. The *Walker* court added that "if a company undertakes projection disclosures, it must make the full disclosures necessary to avoid making the statements misleading." *Id.* In this case, Plaintiffs have provided detailed allegations explaining why the omissions made other statements misleading. The materiality standard contemplates "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus.*, 426 U.S. at 449. Plaintiffs have alleged a plausible claim that the missing cash flow information was important to a reasonable shareholder when deciding how to vote on the merger, the summary information provided was inadequate and misleading, and the reasons why were articulated sufficiently to survive this dismissal motion. This Court will not engage in a fact-intensive test at the pleadings stage. As recently stated by the Fourth Circuit, "[r]esolving a question of materiality against the plaintiff at the motion to dismiss stage is inappropriate unless 'no reasonable jury could find

9

it substantially likely that a reasonable investor would find the fact at issue material in the "total mix" of information.'" *In re Willis Towers Watson plc Proxy Litig.*, 2019 WL 4125227, at *5 (citations omitted).

### B. Loss Causation

To adequately allege injury, plaintiffs must allege loss causation. *New York City Emps.' Retirement Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta*, 552 U.S. 148, 165 (2008)). "Loss causation requires a showing of 'a causal connection between the material misrepresentation and the loss.'" *In re Envision Healthcare Corp.*, Civil Action No. 18-1068-RGA, 2019 WL 3494407, at *8 (D. Del. Aug. 1, 2019) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). In *Dura*, the Supreme Court assumed "that neither the [Federal Rules of Civil Procedure] nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss. But, even so, the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" 544 U.S. at 346 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Defendants contend that there is merely one conclusory sentence that alleges loss causation. (Mot. Mem. 20-21, ECF No. 30-1.) However, Plaintiffs make multiple allegations that the merger consideration undervalued shareholders' shares. (*See, e.g.*, Consol. Am. Compl. ¶¶ 27-34, 48-57, ECF No. 29.) Plaintiffs allege that the misleading Proxy resulted in an undervaluation of shares which caused shareholders to receive less than the true value of their investment. (*Id.* at ¶ 68.) The allegations and the inferences viewed in the light most favorable to Plaintiffs, plausibly suggest that First Connecticut's shares were worth more than the merger

consideration.  Further, "[l]oss causation is a fact-based inquiry" that need not be proven until later stages of litigation.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005); *see also Pub. Emps. Ret. Sys. of Miss., P.R. Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 325 (5th Cir. 2014) ("To plead loss causation in a private securities action, the complaint need only allege facts that support an inference that Defendants' misstatements and omissions concealed the circumstances that bear upon the loss suffered such that Plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud.").  Therefore, this Court concludes that loss causation is adequately pled to survive this dismissal motion.

C. **Transaction Causation**

The Supreme Court has referred to reliance as "transaction causation," not loss causation.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) (citing *Dura*, 544 U.S. at 341-42).  When considering whether a plaintiff has relied on a misrepresentation, the focus is typically "on facts surrounding the investor's decision to engage in the transaction." *Id.*  Section 14(a) is violated when "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction" that resulted in the economic loss at issue. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).

"[T]he United States Courts of Appeals have consistently held that successfully pleading 'transaction causation' in a Section 14(a) suit requires a showing that the challenged proxy statement induced shareholders to directly authorize the specific transaction that resulted in the economic loss." *In re AGNC*, 2018 WL 3239476, at *3 (citing *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796-97 (11th Cir. 2010); *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)).

In this case, Plaintiffs alleged that "[t]he materially incomplete and misleading Proxy was an essential link in the consummation of the Merger, as the Merger could not have been consummated without shareholder approval, which in turn could not have been obtained without the misleading Proxy." (Consol. Am. Compl. ¶ 57, ECF No. 29). Certainly, under the circumstances of this case, the Proxy was an essential link in the accomplishment of the transaction. As discussed above, the Plaintiffs have adequately alleged that the Proxy contained materially misleading statements because of the omission of cash flow information. The shareholder need not establish individual reliance on the proxy statement. *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1119 (4th Cir.1989), *rev'd on other grounds*, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991); *see also TSC Indus.*, 426 U.S. at 444 (holding that there was no need to demonstrate that the alleged defect in the proxy statement actually had a decisive effect on the voting). In this case, the Proxy contained a material omission causing it to be misleading, so the causal relation between violation and injury is sufficiently established since the Proxy was an essential link in the accomplishment of the transaction. *See Mills*, 396 U.S. at 385.

Accordingly, Plaintiffs have adequately alleged the requisite elements of a Section 14(a) claim, and Defendants' Motion to Dismiss Count I shall be DENIED.

## II.     Count II – Section 20(a)

Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the

> controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). A claim for controlling person liability under § 20(a) must therefore "be based upon a primary violation of the securities law." *Svezzese v. Duratek*, 67 F. App'x 169, 174 (4th Cir. 2003) (*per curiam*).

Defendants contend that Plaintiffs have failed to adequately allege a claim under § 14(a), and therefore, the control person claims must be dismissed. As described above, however, Plaintiffs have adequately alleged a § 14(a) claim against the Defendants. Further, Plaintiffs have alleged that the Individual Defendants held positions of authority as First Connecticut directors and had the ability to control the issuance and contents of the Proxy that was disseminated to shareholders. (Consol. Am. Compl. ¶¶ 69-75, ECF No. 29.) As discussed above, Plaintiffs have also adequately alleged negligence on the part of each Individual Defendant.

Accordingly, the § 20(a) claim related to the § 14(a) violation also survives the dismissal motion.

## CONCLUSION

For the reasons stated above, IT IS this 24th day of September 2019, HEREBY ORDERED:

1. Defendants' Motion to Dismiss (ECF No. 30) is DENIED;

2. That the Clerk of the Court transmit copies of this Memorandum Order to counsel for both parties.

_____/s/_____
Richard D. Bennett
United States District Judge